422 A.2d 645

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Frank D'ANGELO.**

Superior Court of Pennsylvania.

Argued June 9, 1980.

Filed Nov. 7, 1980.

David M. McGlaughlin, Assistant District Attorney, Norristown, for Commonwealth, appellant.

Bernard V. DiGiacomo, Norristown, for appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

CAVANAUGH, Judge:

The Commonwealth has appealed from an order of the trial court which granted the defendant's Motion in Arrest of Judgment. Appellee, Frank D'Angelo, was tried with co–defendants, Eileen Sandor and Marsden Seiferth, in a non–jury trial before the Honorable Robert W. Honeyman. At the conclusion of the Commonwealth's case a demurrer was sustained as to the defendant Marsden Seiferth, and

thereafter, after all the evidence was heard the court found Eileen Sanford not guilty on all informations and found appellee guilty of theft by deception.[1] Appellee filed a motion for a new trial and a motion in arrest of judgment. The trial judge sitting alone heard the motions and granted the motion in arrest of judgment. He did not act on the motion for a new trial.

The only issue before us is whether or not the post–trial court erred in finding that there was insufficient evidence to sustain the conviction. The standard to be applied in this determination was set forth in *Commonwealth v. Madison*, 263 Pa.Super. 206, 210, 397 A.2d 818, 820 (1979):

> In testing the sufficiency of evidence, we proceed in several steps. First, we accept as true all the evidence upon which the finder of fact could properly have reached its verdict. Next, we give the Commonwealth the benefit of all reasonable inferences arising from that evidence. And finally, we ask whether the evidence, and the inferences arising from it, are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Williams*, 468 Pa. 357, 365, 362 A.2d 244, 248 (1976); *Commonwealth v. Carbonetto*, 455 Pa. 93, 314 A.2d 304 (1974); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth v. Burton*, 450 Pa. 532, 301 A.2d 599 (1973). This inquiry is bounded by two poles. On the one hand, the Commonwealth 'does not have to establish guilt to a mathematical certainty and may in a proper case rely wholly on circumstantial evidence.' *Commonwealth v. Jacobs*, 247 Pa.Super. 373, 372 A.2d 873 (1977); *Commonwealth v. Larkins*, 235 Pa.Super. 19, 341 A.2d 204 (1975). On the other hand, guilt must be proved; mere conjecture or surmise is not sufficient. *Commonwealth v. Moore*, 226 Pa.Super. 32, 311 A.2d 704 (1973).

*See also Commonwealth v. Ransome*, 485 Pa. 490, 402 A.2d 1379 (1979); *Commonwealth v. Helm*, 485 Pa. 315, 402 A.2d

1. 18 Pa.C.S.A. § 3922.

4

500 (1979); *Commonwealth v. Fassett*, 260 Pa.Super. 323, 394 A.2d 573 (1978).

We have reviewed the record in this light and find ample support for the following facts:

Donald Stewart was the owner of a 1973 Ford Maverick automobile which was involved in a collision in October, 1976. His car was struck on the left side and driven off the side of the road. Within two days following the accident he took photos of the vehicle depicting the damage sustained in the accident. These photos were received in evidence. Stewart took his vehicle to the State Farm Insurance facility for an estimate of the damage. State Farm insured the other driver involved in the collision. The damage was inspected and an estimate was prepared on behalf of State Farm by their employee Kenneth Menta. At the time of the estimate it was noted that the mileage shown on the odometer was 53,876 miles. Menta also took photos of the vehicle. These were received in evidence together with his damage appraisal. State Farm, however, denied the claim and Stewart decided to sell his vehicle in its damaged condition. This led him eventually to D'Angelo's Garage in Conshohocken, Pennsylvania, where he met appellee, Frank D'Angelo, and sold him the vehicle for $300 cash on November 16, 1976. Stewart signed an assignment of certificate of title to D'Angelo's Garage, Inc., c/o Fra–Mar, Inc., M. M. Seiferth–President. The affidavit was completed on December 7th with Frank D'Angelo acting as notary. On the same date D'Angelo's Garage, Inc. executed a reassignment of certificate of title to Eileen M. Sandor and Eileen M. Sandor made application for a certificate of title. Mr. D'Angelo also acted as notary on the reassignment and application forms. M. M. Seiferth, President of Seiferth Insurance Consultants, 365 W. Elm Street, Conshohocken, Pennsylvania, wrote a letter to State Farm reporting that the 1973 Ford Maverick owned by Eileen Sandor, State Farm's insured, had suffered damage in an accident of January 3, 1977, and that it had been towed to D'Angelo's Garage, 365 W. Elm Street, Conshohocken, Pennsylvania where it was available for inspection.

This letter enclosed a copy of a letter purportedly written by Eileen Sandor to the Upper Merion Police Department reporting that her vehicle had been damaged in a hit and run accident while she was shopping at the King of Prussia Plaza on January 3, 1977. Harry Adams who is in charge of the record section of the Upper Merion Township Police Department testified that he made a search for the Sandor letter in his office but could not find a record of its being received.

On January 27, 1977, Robert Doheny, field property claim adjuster for State Farm, went to the D'Angelo garage to inspect the 1973 Ford Maverick. He inspected the vehicle, prepared an estimate and came to an agreed repair price with appellee. Doheny noted the mileage shown on the vehicle as 53,961. He also took two photos of the vehicle which were received in evidence.

On March 3, 1977, Doheny went to appellee's garage to inspect damage to another vehicle which was owned by Eileen Sandor which had reportedly been involved in an accident when he noticed that the 1973 Ford Maverick was still in the garage in its damaged condition. On returning to his office, Doheny checked his files and verified that a check sent on behalf of its insured Eileen Sandor, had been issued and paid to "D'Angelo's Garage, Inc." The check which was in evidence was endorsed by appellee as President of the payee. There was evidence that Fra–Mar, Inc. which in the title transfer was the addressee for D'Angelo's Garage was located in the same building as the garage. "Fra–Mar" is a shortening of the names of appellee and his son–in–law, Marsden Seiferth. Eileen Sandor and Mr. Seiferth's secretary during the time of these events. The Menta estimate of October 28, 1976, was for $1,631.05 and the Doheny estimate of January 27, 1977, was for $1,746.20; the variation was caused by considering such items as used doors rather than new doors, straightening the quarter panel rather than replacing it, and using painted strips rather than factory roll kit strips.

Obviously it was the Commonwealth's theory that after appellee purchased the vehicle from Stewart it was never repaired before the report of the alleged hit and run accident of January 3, 1977, and that appellee deceived State Farm and thereby received the $1,646.00 draft in payment for damage which in fact never was incurred while Eileen Sandor was insured by State Farm. We find abundant circumstantial evidence to support the verdict of the trial judge.

Initially we have examined the photos of the vehicle which were taken after the first accident and compared them to the photos of the vehicle taken after the vehicle was allegedly repaired and had undergone the second accident, and have no hesitancy in concluding that there was more than sufficient evidence to support the trial judge's conclusion at the time he announced his verdict that:

But from the totality of the evidence I certainly am satisfied beyond a reasonable doubt if not beyond all peradventure of doubt that there was no accident in January. That car never was out of the possession and control of Mr. D'Angelo, and that essentially the same damage that was there after he bought it from Mr. Stewart was there when Mr. Doheny looked at it.

There is also evidence that mileage was noted as 53,876 when Menta made his damage estimate on October 28, 1976; that thereafter Stewart had been driving the car around looking for a buyer before he sold it to D'Angelo on November 16, 1976, and that when the vehicle was inspected following the alleged accident in January 1977, it showed only 85 miles more than the October 28, 1976, reading, permitting the clear inference that the car had not been operated from the time it was brought to the D'Angelo garage by Stewart. The estimate as to the repairs are essentially the same both as to items to be repaired and the total cost of repair. The crime of theft by deception provides (18 Pa.C.S.A. § 3922):

(a) Offense defined.—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

(2) prevents another from acquiring information which would affect his judgment of a transaction; or

(3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

From the evidence the factfinder could easily conclude that appellant after purchasing the car from Stewart never had it out of his possession; that he participated in the creation of a false impression that there was a bona fide sale of the vehicle to Eileen Sandor and that the vehicle suffered damage in a subsequent accident after it had been repaired by him; and that as a result of this deception the State Farm damage settlement draft was paid to him.

When a trial judge who heard a case nonjury reviews the evidence under the standards for consideration of a motion in arrest of judgment, his scope of review is no different than if the verdict had been rendered by a jury. *Commonwealth v. Nelson*, 245 Pa.Super. 33, 369 A.2d 279 (1976). In *Nelson*, however, our court reinstated the verdict even though the post trial motion court had not acted on a motion for a new trial. The Supreme Court affirmed the order reversing the grant of arrest of judgment but remanded to the trial court for disposition of the motion for a new trial. *Commonwealth v. Nelson*, 476 Pa. 269, 382 A.2d 715 (1977). *Accord, Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977); *Commonwealth v. Kirkman*, 264 Pa. Super. 170, 399 A.2d 720 (1979); *Commonwealth v. Ponder*, 260 Pa.Super. 225, 393 A.2d 1235 (1978). This is the situation here. Order granting motion in arrest of judgment is reversed and the case is remanded for consideration of motion for a new trial.

Reversed and remanded.