606 A.2d 1380

**COMMONWEALTH of Pennsylvania**

v.

**Angelo NOCK, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1991.

Filed March 30, 1992.

Reargument Denied May 28, 1992.

Jeremy C. Gelb, Philadelphia, for appellant.

Michael Erlich, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge, and WIEAND and JOHNSON, JJ.

ROWLEY, President Judge:

Appealing from the judgment of sentence entered February 6, 1991, in the Court of Common Pleas of Philadelphia County, Angelo Nock raises four issues, one of which we will address: whether trial counsel was ineffective for failing to investigate, interview, and call to testify an eyewitness to the murder for which appellant was convicted. After reviewing the record and carefully considering the parties' arguments, we vacate the judgment of sentence and remand for a new trial.

In 1988, appellant and a co-defendant, Leroy Reed, were charged with the 1982 murder of Alexander Glenn. During the joint non-jury trial, an eyewitness, Odell Brown, testified to the following: On the day of the murder, Brown saw the decedent in a bar. While in the bar, the decedent, pretending to have a gun, robbed the bartender and then left the bar. Moments later, Brown heard gunshots. He exited the bar in order to investigate the gunshots and observed the decedent running down the street. Brown also saw a group of five or six men, including appellant and

Reed, standing on the corner from which the shots were fired. Brown stated that some of the men had guns. Brown stated that Reed definitely had a gun, and appellant may have had a gun, but he was not sure. Brown also stated that he saw Reed fire his gun in the direction of the decedent.

Steven Moore also testified at appellant's trial. Moore stated that the day after the murder, appellant and his co-defendant visited his house. According to Moore, appellant stated that Reed had shot the decedent in the back. Appellant also told Moore that he had pulled a gun on Brown. Both appellant and Reed showed guns to Moore.

On the basis of this testimony, appellant was convicted of first degree murder, conspiracy, and possessing an instrument of crime. After a penalty hearing, the trial court sentenced appellant to life imprisonment on the murder charge, a concurrent term of imprisonment of five to ten years on the conspiracy charge, and a concurrent term of imprisonment of two and one-half to five years on the possessing an instrument of crime charge. After trial counsel filed post-sentence motions, he was permitted to withdraw. Newly-appointed counsel filed supplemental post-sentence motions, alleging ineffectiveness of trial counsel. After hearings on the ineffectiveness claims were held, the trial court denied appellant's motions. This timely appeal was then filed.

Appellant contends that trial counsel was ineffective for failing to investigate, interview, and call to testify an eyewitness to the murder, Leonard Rogers. In order to prevail on an ineffectiveness claim, appellant must show that

by act or omission counsel was arguably ineffective; counsel's act or omission could not have had a reasonable basis designed to effectuate appellant's interests; and appellant was prejudiced by the act or omission in that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different.... To obtain relief on this claim[, that is, that counsel was ineffective for failing to interview or present

a witness,] appellant is required to establish that: 1) the witness existed; 2) the witness was available; 3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; 4) the witness was prepared to cooperate and testify for appellant at trial; and 5) the absence of the testimony prejudiced appellant so as to deny him a fair trial.

*Commonwealth v. Petras*, 368 Pa.Super. 372, 376–77, 534 A.2d 483, 485 (1987) (citations and footnote omitted). For the following reasons, we conclude that appellant has met this burden.

Both Rogers and appellant's trial counsel testified at the post-sentence hearings. A review of the transcripts of these hearings reveals the following set of occurrences: On November 17, 1988, Rogers gave a statement to a Philadelphia detective. Rogers stated that he was a witness to the murder of Alexander Glenn. He stated that he saw appellant and Reed near an alley which was perpendicular to the street on which the decedent was shot. Rogers also stated that Reed jumped out from the alley and fired shots. Furthermore, he testified that he did not see appellant with a gun. He also told the detective that after the shooting appellant and Reed ran away together.

On November 23, 1988, Rogers gave another statement to the police. This second statement contained substantially the same information as the November 17 statement except for the following differences: In the second statement, Rogers stated that appellant was sitting on some steps right next to the alley and that appellant got up off the steps when Reed came out of the alley. Again, he stated that the only person he saw with a gun was Reed.

On December 14, 1988, Rogers testified about the shooting before a grand jury. Rogers again testified as to his observations at the time of the shooting. As to appellant and Reed specifically, Rogers stated that Reed was standing next to the alley and that appellant "was sitting on the steps [approximately eight feet away from Reed] like he was going to nod off or something." Grand Jury Tran-

script, 12/14/88, at 19–20. He also stated that it did not appear to him that appellant and Reed were together.

At the post-sentencing hearing, Rogers testified that appellant "was sitting on the step nodding, so once we heard the shots, he jumped up, shook his head, looked around and we just took off." Hearing Transcript, 10/10/90, at 6–7. In addition, Rogers stated that had he been called to testify he probably would have done so and that his testimony would have been substantially similar to his testimony at the hearing. Rogers also discussed the statements he made to the police. Rogers stated that although he gave statements to the police, the statements were not completely accurate. He stated that the police added information to the information which he supplied to them. Specifically, he asserted that he never told the police that both Reed and appellant were standing next to the alley. He reaffirmed his statement that appellant was sitting on the steps, "nodding off."

Appellant's trial counsel also testified at the hearing. He stated that after he requested discovery from the Commonwealth, he received only the statement dated November 23. He stated that he did not receive the statement dated November 17. Trial counsel also stated that he reviewed the transcript of Rogers' grand jury testimony when they were provided to him on either the day the trial started or the day before.

After considering the statement dated October 23 and the transcript of Rogers' grand jury testimony, trial counsel decided not to call Rogers as a defense witness. Counsel based this decision on his belief that because Brown's testimony, as well as Moore's testimony, was so inconsistent and incredible, the Commonwealth did not have sufficient evidence to sustain a conviction. Trial counsel also stated that he "decided that [he] had done enough work to win the case." Hearing Transcript, 9/10/90, at 18–19.

After reviewing this testimony, we conclude that trial counsel's decision not to interview Rogers or call him

as a witness was not reasonable. The outcome of this case hinged on the testimony of the Commonwealth's eyewitness. "[W]hen the Commonwealth's case is thus dependent upon the credibility of its witnesses, trial counsel must explore the testimony of any witness ... whose testimony might cast doubt on the testimony of the Commonwealth's witnesses." *Commonwealth v. McCaskill*, 321 Pa.Super. 266, 276, 468 A.2d 472, 477 (1983). Rogers was also an eyewitness to the shooting and he would have provided information which was exculpatory to appellant. As trial counsel asserted, the testimony of the Commonwealth's witnesses was inconsistent; it was not incredible, however. In fact, trial counsel did not demur to the charges at the conclusion of the Commonwealth's case, and he conceded during his closing argument that the evidence was sufficient to sustain a conviction. Nonetheless, counsel chose not to present exculpatory evidence on appellant's behalf. This choice did not have a reasonable basis designed to effectuate his client's interests.

■ Although counsel's decision was not reasonable, we must also determine whether appellant was prejudiced by the decision. We disagree with the trial court's conclusion that appellant was not prejudiced by counsel's omission.

To prove prejudice in the context of an ineffectiveness claim, "[a]n appellant must show that the error was 'so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable.'" *Commonwealth v. Morocco*, 375 Pa.Super. 367, 371, 544 A.2d 965, 967 (1988) (quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984)), *allocatur denied*, 520 Pa. 615, 554 A.2d 508 (1989). We cannot say that, under the circumstances of this case, counsel's failure to call Rogers did not deprive appellant of a fair trial. Brown's various accounts of appellant's role in the shooting were inconsistent and unclear. At different times, he stated that appellant did have a gun, that he did not know if appellant had a gun, that appellant was firing his gun, that Reed was the only person firing a gun. Rogers' testimony that appellant

did not have a gun could have provided the reasonable doubt necessary for a more favorable outcome to appellant.

This conclusion is not altered by the fact that the trial judge heard the evidence and adjudicated appellant's guilt in this case. The same judge presided over the post-sentencing hearing and heard Rogers' testimony as well as the testimony concerning the statements he made to the police. After hearing this testimony, the trial judge concluded that "there is no reasonable possibility that the result of the trial would have been different had Rogers been called to testify." Trial Court Opinion, 3/28/91, at 5. To the extent that this was a determination that appellant was not prejudiced by counsel's failure to call the witness, we have already discussed our disagreement.

■ The Commonwealth sets forth an additional argument in support of its contention that because the fact-finder, i.e., the trial judge, determined that there is no reasonable probability of a different outcome, appellant was not prejudiced by counsel's failure to present Rogers as a witness. The Commonwealth argues that "by permitting Rodgers to testify, Judge Savitt, in effect, reopened the trial and admitted additional evidence for the defense. He concluded, however, that Rodgers' testimony did not create a reasonable doubt as to defendant's guilt." Commonwealth's Brief at 11. For the following reasons, we disagree.

First, the reasonable probability standard is applied to determine whether a defendant is entitled to a new trial, at which the fact-finder must consider whether guilt has been proven beyond a reasonable doubt. A defendant's burden of proving that there is a reasonable probability that a missing witness's testimony would have changed the outcome of the trial cannot be equated with, or substituted for, the Commonwealth's burden of proving the defendant's guilt beyond a reasonable doubt. If this testimony had been admitted at trial, the judge, as fact-finder, would have had to determine whether it cast a reasonable doubt on appellant's guilt. At the post-trial hearing, the judge had to

▮▮▮▮▮▮▮▮▮▮▮▮

determine whether a reasonable probability existed that the outcome of the case would have been different. These inquiries are not interchangeable.

▮ Furthermore, a judge's role during a non-jury trial is not equivalent to his or her role with respect to post-trial motions. During trial,

> the province of a trial judge sitting without a jury is to do what the jury is required to do, namely, consider all the evidence; reconcile contradictions and discrepancies in the testimony, if possible; dismiss what is incredible; and, from all that is presented, assemble a logical, continuous account which rings with verisimilitude, appeals to reason and convinces the judgment that the controverted event occurred in that and in no other manner.

*Commonwealth v. Lemons*, 404 Pa. 263, 268, 171 A.2d 785, 788 (1961). With respect to post-trial motions, however, the trial judge's role is to consider and rectify, if necessary, alleged trial errors. *See Commonwealth v. Koch*, 288 Pa.Super. 290, 431 A.2d 1052 (1981) *(en banc )*; *Commonwealth v. Perry*, 279 Pa.Super. 32, 420 A.2d 729 (1980). Similar to the burdens of proof discussed above, the roles of the trial judge at these different stages are not interchangeable.

Additionally, while we have found no case directly on point, the courts of this state have held that Pa.R.Crim.P. 1102(a)[1] "restricts the trial judge's authority over the verdict in a nonjury trial to one which is no greater than his or her authority over a jury verdict...." *Commonwealth v. Stark*, 526 Pa. 1, 5, 584 A.2d 289, 290 (1990) (citing *Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977)). This rule has been applied in cases where the trial judge has entered a guilty verdict, but changed the verdict to not guilty during the post-trial stage. Because "the authority

1. Rule 1102. Procedure When Jury Trial is Waived
 (a) When a defendant waives a jury trial, the trial judge shall determine all questions of law and fact and render a verdict which shall have the same force and effect as a verdict of a jury.
 Pa.R.Crim.P. 1102(a).

of a trial judge over a jury verdict is limited to consideration of postverdict motions in arrest of judgment or the granting of a new trial[,]" *id.*, 526 Pa. at 5, 584 A.2d at 290, the trial court cannot "alter[ ] the verdict[ ] based upon a redetermination of credibility or a re-evaluation of evidence." *Commonwealth v. Parker*, 305 Pa.Super. 516, 524, 451 A.2d 767, 771 (1982).

■ Similarly, a trial judge cannot, during a post-sentence hearing, reopen the trial and admit additional evidence for the defense. If this had been a jury trial, it is beyond question that the trial judge could not have recalled the jury so that it could hear Roger's testimony and, with the benefit of the additional testimony, re-adjudicate appellant's guilt. This procedure would be just as improper where the trial judge, rather than a jury, serves as the fact-finder. This conclusion finds further support in the principle that the fact-finder is required to listen with an open mind to all evidence presented, and only after all evidence is presented should the fact-finder consider the defendant's guilt, or lack thereof. The fact-finder should not reach the conclusion that the defendant is guilty, and then decide if additional information changes this conclusion. Such a process would undermine the fundamental tenet of our criminal justice system, namely, that a criminal defendant is innocent until proven guilty.

For these reasons, we conclude that appellant was denied a fair trial due to trial counsel's ineffectiveness. Accordingly, we vacate the judgment of sentence and remand for a new trial.

Judgment of sentence vacated and case remanded for a new trial. Jurisdiction is relinquished.