631 A.2d 639

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Mazon JOHNSON.**

Superior Court of Pennsylvania.

Argued April 19, 1993.

Filed Sept. 3, 1993.

Hugh Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellant.

Anthony Carrozza, III, Media, for appellee.

Before CAVANAUGH, WIEAND, McEWEN, CIRILLO, DEL SOLE, BECK, TAMILIA, JOHNSON and HUDOCK, JJ.

TAMILIA, Judge.

In this appeal by the Commonwealth, we are asked to determine the correct standard of review on a motion to arrest judgment, and under the appropriate standard of review, to determine whether the trial court erred in arresting judgment on defendant's conviction for third degree murder. Finding, under the applicable case law and the specific facts of this case, that the trial court erred, we vacate the Order arresting judgment for third degree murder, and we remand for reinstatement of the original verdict and imposition of sentence thereon.

The factual and procedural history of this case are summarized as follows. At approximately 6:30 p.m. on November 8, 1990, the defendant, Mazon Johnson, shot his girlfriend, Dana Chinn, in the head with a .22 caliber pistol. Defendant was visiting Chinn's home at the time with his friend, Shawn Williams. At the time of the shooting, the decedent's five-year old daughter, Tashara, was coming into the kitchen to ask her mother for a drink of water. Tashara was in the

hallway, approximately one foot from the kitchen, and saw defendant arguing with the decedent, telling her "he don't want no son." This remark was in reference to a statement the decedent had made earlier in the evening, telling defendant she was pregnant, although she was not. Tashara then saw defendant push the decedent while holding the handgun with both hands. Defendant pointed the gun at the victim's head and shot her from a distance of approximately two to four feet. Defendant and Shawn Williams ran out the back door and defendant threw the gun under a bridge. When defendant returned to his home at 9:00 p.m., he was arrested by the police. The victim died a short time later at the hospital.

Defendant waived his right to a jury trial and was tried by the Honorable Lisa Aversa Richette on charges of murder, voluntary manslaughter, involuntary manslaughter and possessing an instrument of crime. Tashara Chinn testified as an eyewitness for the Commonwealth, and defendant and Shawn Williams testified as eyewitnesses for the defense. Williams, however, did not see the shooting take place, as he claimed he was on the telephone and had his back turned to defendant and the victim.

At the conclusion of trial, the trial court stated that it did "not believe the defendant's version at all of what happened. It's physically impossible that this woman would have been shot in the temple, as she was, on the facts as [defendant] portrays them" (N.T., 3/20/91, pp. 209–210). The trial court went on to find there was malice sufficient to sustain a conviction for third degree murder. *Id.* Defendant was adjudicated not guilty of involuntary manslaughter and possessing instruments of crime.

On March 27, 1991, defendant filed a motion for a new trial and/or arrest of judgment, alleging that the evidence was insufficient to sustain his conviction in that it failed to establish that the killing was committed with malice. Defendant contended the evidence failed to establish beyond a reasonable doubt that he "consciously disregarded an unjustified and

extremely high risk that his actions might cause death or serious bodily harm."

Hearing was held on defendant's motion on July 17, 1991, and the trial court initially rejected defendant's claim, stating that when it heard the case, it "felt there was malice," and decided "to proceed on the basis of third degree murder" (N.T., 7/17/91, pp. 12–13). Later in the same hearing, however, after defendant's mother and father testified on his behalf, the trial court stated: "In thinking about this, maybe there isn't enough evidence to sustain third degree murder. I'm not sure. Maybe there is a reasonable doubt about the third degree, but there is no reasonable doubt about involuntary manslaughter" (*Id.*, p. 18). The trial court then continued the matter in order to reread the notes of testimony (*Id.*, pp. 24–25).

Further hearing was held on September 25, 1991, at which time the trial court indicated "the whole thing in this case is the issue of malice ... and I made my finding based on the fact that pointing a loaded gun at someone's head is *per se* malice, for which there is a substantial body of authority. But, on the other hand, there is only one witness that says this. And that's that child." (N.T., 9/25/91, p. 7.)

The trial court stated to the assistant district attorney that "I'm very concerned about this, I really am, because I have to send him away for 5 years." (*Id.*, p. 7.) The following exchange then occurred between the trial court and the assistant district attorney:

MR. PERRICONE: Your Honor, the problem that the court—one of the concerns involved in the court's making its decision here is the fact that we, of course, are bound by certain principles of law to follow upon review of the verdict.

THE COURT: Correct.

MR. PERRICONE: And, as the court sat as the finder of fact, perhaps sometimes the temptation is to re-evaluate facts after they—because rereading the notes of testimony—

THE COURT: No; what I'm doing is, I'm looking at this evidence to see whether or not it does sustain this verdict beyond a reasonable doubt, that's what I'm looking at, which I think is my proper function at this point.

MR. PERRICONE: Exactly, Your Honor.

And in reviewing a verdict at the post-verdict stage, whether it's reviewing a jury verdict or a verdict by Your Honor, the court is bound by the standards of law set out in the cases cited in my brief; that is, that one must evaluate the evidence in the light most favorable to the Commonwealth.

And in this particular case, [defendant's] argument, and some of the concerns that the court is expressing, were evidence that was inconsistent with the Commonwealth's evidence, consistent only with the defense evidence.

THE COURT: No, no.

Excuse me.

Your child, who was very good, her evidence is believable only if she did, in fact, see everything.

MR. PERRICONE: I agree, Your Honor.

THE COURT: And *when I reread this, and looked at the exhibits, and so forth, it just seemed to me she may have seen more of it, but not all of it.*

MR. PERRICONE: Well, Your Honor, she testified that she did see all of it and put herself—

THE COURT: *I know, but I don't have to believe her totally.*

MR. PERRICONE: Another woman, I believe that's Miss James, testified that after the gunshot happened, that the little girl came running from the kitchen area saying, mommy has been shot.

THE COURT: She saw her after she was shot, but I don't think she saw all that she says she saw because she was on the stairwell.

MR. PERRICONE: *The problem, Your Honor, is that, at this stage, it would not be a proper application of the*

*standards of review to disbelieve parts of her testimony, and believe other parts of her testimony.*

THE COURT: *Why not? I can do that.*

MR. PERRICONE: *That is requiring the court to re-evaluate the credibility of witnesses, which is—*

THE COURT: *No; I can have a reasonable doubt about certain parts of her testimony when I review it.*

*That's the whole function of a reviewing court.*

MR. PERRICONE: *Your Honor, but you must—the reasonable doubt cannot be based on a reevaluation of the evidence that has already been submitted to the court.*

THE COURT: What can it be based on?

MR. PERRICONE: The re-evaluation can be, if you take the evidence in the light most favorable to the Commonwealth—

THE COURT: I have.

MR. PERRICONE: —Then you look at it and you say it doesn't make out the crime.

In this particular case, Your Honor, the evidence in the light most favorable to the Commonwealth, the little girl testified that she saw Zonie push her mommy against the wall, point the gun at her and shoot, and mommy dropped to the ground.

Now, whether that is intentional or accidental, that's for the finder of fact to determine.

If it is accidental, Your Honor, if we have an accidental situation where a person pushes somebody against a wall, points a gun at that person's face, and pulls a trigger, under all the case law that is cited, Your Honor clearly was familiar with at the time of the trial, and has been recited in my brief, that constitutes malice sufficient for third degree murder.

THE COURT: I know; I know.

But I don't think she was in a position to really say precisely what was going on. I think she heard the shot, she saw her mother fall.

MR. PERRICONE: Your Honor, *that is not her testimony.*

THE COURT: *I understand that.*

MR. PERRICONE: *It would be an inappropriate application of the standard of review to now decide that she could not have seen all this.*

THE COURT: *It just doesn't make sense to me.*

(*Id.*, pp. 10–14) (emphasis added.) The trial court then stated it was "just trying to avoid that mandatory sentence." (*Id.*, p. 15).[1] Thereafter, the trial court denied defendant's motion for a new trial, but granted his motion in arrest of judgment as to the conviction for third degree murder. The trial court adjudicated defendant guilty of involuntary manslaughter and sentenced defendant to a term of one (1) to five (5) years imprisonment. The Commonwealth appealed.

The trial court stated in its Opinion:

[I]n order for a trial court to properly grant the Motion of a criminal defendant to arrest judgment on the basis of insufficient evidence, it must determine, after accepting all of the evidence *it chooses to believe,* and all reasonable inferences therefrom upon which the verdict could possibly have been based, that such evidence and such inferences would, nonetheless, be insufficient as a matter of law to find the defendant guilty beyond a reasonable doubt of the crime charged. *Commonwealth v. Bagley,* 296 Pa.Super. 43, 47, 442 A.2d 287, 289 (1982), citing *Commonwealth v. Meadows,* 471 Pa. 201, 369 A.2d 1266 (1977); *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973).

(Slip Op., Richette, J., 4/16/92, p. 7; emphasis added.)

After the submission of briefs and oral argument before a panel of this Court, this case was certified to the Court en banc to re-assess the viability of the standard of review utilized by the trial court.

In *Meadows, supra,* our Supreme Court stated the appropriate standard of review as follows:

"In passing upon such a motion [in arrest of judgment], the sufficiency of the evidence must be evaluated upon the *entire trial record.* All of the evidence must be read in the

---

1. This apparently refers to 42 Pa.C.S. § 9712(a) which requires a mandatory five-year sentence for, *inter alia,* third degree murder.

light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove." Citations omitted; emphasis in original.

. . . . . .

In order for a trial court to properly grant a criminal defendant's motion in arrest of judgment on the ground of insufficient evidence, "it must be determined that accepting all of the evidence and all reasonable inferences therefrom, upon which, if believed [the verdict could properly have been based], it would be nonetheless insufficient in law to find beyond a reasonable doubt that the [defendant] is guilty of the crime charged." *Commonwealth v. Blevins*, 453 Pa. 481, 483, 309 A.2d 421, 422 (1973)....

*Commonwealth v. Meadows*, 471 Pa. 201, 204, 369 A.2d 1266, 1268 (1977). The *Meadows* Court went on to emphasize that a trial judge's authority over a nonjury verdict is no greater than the authority of a judge over a jury verdict. *Id.* at 205, 369 A.2d at 1268 n. 5.

More recently, a panel of this Court stated:

[A] judge's role during a non-jury trial is not equivalent to his or her role with respect to post-trial motions. During trial,

> the province of a trial judge sitting without a jury is to do what the jury is required to do, namely, consider all the evidence; reconcile contradictions and discrepancies in the testimony, if possible; dismiss what is incredible; and, from all that is presented, assemble a logical, continuous account which rings with verisimilitude, appeals to reason and convinces the judgment that the controverted event occurred in that and in no other manner.

*Commonwealth v. Lemons*, 404 Pa. 263, 268, 171 A.2d 785, 788 (1961). With respect to post-trial motions, however, the trial judge's role is to consider and rectify, if necessary, alleged trial errors.

*Commonwealth v. Nock*, 414 Pa.Super. 326, 333, 606 A.2d 1380, 1383 (1992). When considering a post-verdict motion in

arrest of judgment or the granting of a new trial, "the trial court cannot alter the verdict based upon a redetermination of credibility or a re-evaluation of evidence." *Id.* at 334, 606 A.2d at 1384.

Nevertheless, the trial court in this case, in conducting its post-verdict review, relied upon a statement in *Bagley, supra,* that in assessing the sufficiency of the evidence, it may accept so much of the evidence "it chooses to believe." The *Bagley* panel based this proposition on *Meadows* and *Blevins,* but a careful review of those cases does not support that finding. Indeed, our research discloses no other published appellate decision in this Commonwealth which contains or relies upon the contested language of *Bagley.* Moreover, in a case filed later in the same year as *Bagley, Commonwealth v. Parker,* 305 Pa.Super. 516, 451 A.2d 767 (1982), the *Meadows* standard of review on a motion in arrest of judgment was applied, and the panel found the trial court improperly reconsidered the facts in *sua sponte* arresting judgment on its nonjury verdict ("the trial court would have been required to view the evidence in the light most favorable to the Commonwealth as verdict winner and could not have altered the verdicts based upon a *redetermination of credibility or a re-evaluation of the evidence* ") (*Parker, supra* at 524, 451 A.2d at 771; emphasis added).[2]

Inasmuch as it does not appear the language in question in *Bagley* was applied to the decision in that case, or in fact to any other case, we deem it merely dicta and an unintended

---

**2.** Following is the complete statement on the law as to the standard of review, as contained in *Commonwealth v. Parker,* 305 Pa.Super. 516, 451 A.2d 767 (1982):

A trial judge has no more authority over a verdict in a non-jury trial than he does over a jury verdict. *Commonwealth v. Meadows,* 471 Pa. 201, 205, 369 A.2d 1266, 1268 n. 5 (1977); *Commonwealth v. Brown, supra* [192 Pa.Super. 498, 162 A.2d 13 (1960) ]; *See Commonwealth v. Johnson,* 359 Pa. 287, 59 A.2d 128 (1948); Pa.R.Crim.P. 1102(a). As we have stated, the authority of a trial judge following the recording of a verdict in a non-jury trial is limited to consideration of post-verdict motions in arrest of judgment or the granting of a new trial. *Commonwealth v. Meadows, supra; Commonwealth v. Brown, supra.* The standard of review for the trial court as it passes

addition to the standard of review. We take this opportunity, therefore, to specifically find the language in *Bagley,* "it chooses to believe," to have no precedential value and to state once again our adherence to the standard of review of *Meadows* and its progeny.

■ Having determined the proper standard of review, we turn to the specific facts of this case, and we find the trial court impermissibly engaged in a redetermination of credibility and reevaluation of the evidence. *Nock, supra; Parker, supra.*

■ Viewed in the light most favorable to the Commonwealth, the evidence at trial established that defendant, shortly after the victim told him she was pregnant, shoved the victim, told her he did not want a son, pointed a gun at her head and shot her. This episode was viewed by the victim's five-year old daughter, Tashara, from a hallway approximately one foot from the kitchen. The trial court contends that its reexamination "of the Commonwealth's own photographs of the scene might show that the child could not, from her stairwell vantage point, have been able to look directly into the kitchen to see the pushing she described." (Slip Op. at 8.) Tashara's trial testimony, however, was not that she was in the stairwell, but that she was standing *near* the stairwell, and only about one foot from the kitchen, with a view of the shooting (N.T., 3/20/91, pp. 29–31).

The trial court further wondered:

> upon a motion in arrest of judgment, is limited to a determination of the absence or presence of that quantum of evidence necessary to establish the elements of the crime. *Commonwealth v. Meadows, supra* 471 Pa. at 208, 369 A.2d at 1269; *Commonwealth v. Slout,* 288 Pa.Super. 471, 432 A.2d 609 (1981); *Commonwealth v. Ponder,* 260 Pa.Super. 225, 393 A.2d 1235 (1978). Had defendant moved for an arrest of judgment, the trial court would have been required to view the evidence in the light most favorable to the Commonwealth as verdict winner and could not have altered the verdicts based upon a redetermination of credibility or a re-evaluation of the evidence. *See Commonwealth v. Meadows, supra; Commonwealth v. Slout,* 288 Pa.Super. 471, 432 A.2d 609 (1981); *Commonwealth v. D'Angelo,* 282 Pa.Super. 1, 422 A.2d 645 (1980); *Commonwealth v. Kirkman,* 264 Pa.Super. 170, 399 A.2d 720 (1979); *Commonwealth v. Ponder, supra.*
> *Id.* at 523–524, 451 A.2d at 770–771.

How could this child have seen what other Common-wealth witnesses directly engaged in the action had missed? Would Dana's friends and houseguests lie about an argument to protect a defendant to whom they had little allegiance? Finally how colored was the little girl's recital of the scene by background television (in which guns seem always to be pointed directly at the victim)? Finally would Dana's friends be more likely to lie about the Dana–Mazon relationship or a child to whom the defendant was essentially a stranger and her mother's lover?

(Slip Op. at 9.) We find this introspective soliloquy carries little weight as none of the queries contained therein are supported by the trial record.

The evidence established Tashara was the only eyewitness to the shooting, as the only other person in the kitchen besides defendant and the victim was defendant's friend, Shawn Williams, who testified his back was turned at the time of the shooting. The testimony of the victim's friends and house-guests did not conflict with Tashara's. As they were in another part of the house at the time of the shooting, they could not have seen it, and their testimony was not that there was no argument, but only that they did not hear one.

We are perplexed by the trial court's reference to the influence on Tashara's testimony by "background television." No such reference was ever made at trial, although the following exchange between defense counsel and the trial court occurred at the hearing on post-verdict motions:

MR. CARROZZA: As you see people holding guns on t.v., same exact way that [Tashara] demonstrated, exactly the same way that you watch when you watch t.v., you watch somebody hold a gun.

THE COURT: I know, but nobody has been able to break down that little girl to say you didn't really see this, or that he was holding the gun another way, or anything.

(N.T., 7/17/91, p. 7.)

This Court finds it remarkable that the testimony of Tashara Chinn, whom the trial court described during trial as

"absolutely marvelous," "wonderful," an "extraordinary child," and the "best witness" in the case (N.T., 3/20/91, pp. 36; 50; 95); and at the post-verdict hearing as "unusually bright," "very accurate" and "extraordinary" (N.T., 7/17/91, pp. 2; 3; 7), was later found to be incredible and created "a veritable forest of reasonable doubt" on "the court's mental landscape" (Slip Op. at 8).

In another recent case in which Judge Richette arrested judgment for third degree murder after a nonjury trial, this Court, per the Honorable Justin M. Johnson, vacated the arrest of judgment and emphatically stated:

> In light of the fact that the initial verdict was guilty, it was not the function of the trial court, in reviewing post-trial motions, to reweigh the evidence presented at trial. The evidence, when reviewed in light of the appropriate standard of review for a post-trial motion in arrest of judgment, is sufficient to uphold Bigelow's conviction on the charge of third degree murder. We, therefore, conclude that the trial court erred in arresting judgment on the charge of third degree murder.

*Commonwealth v. Bigelow*, 416 Pa.Super. 449, 453, 611 A.2d 301, 304 (1992). The *Bigelow* court also accurately noted:

> A person may be convicted of third degree murder where the killing is neither intentional nor committed during the perpetration of a felony, but when there is malice afore-thought. Malice in its legal sense exists not only where there is particular ill will, but also where there is a wicked-ness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty.

*Id.*

Thus, even in the situation where defendant argued that he and the victim merely were playing around and he did not know the gun was loaded, his belief was irrelevant for the purpose of determining the existence of malice. *Common-wealth v. Young*, 494 Pa. 224, 431 A.2d 230 (1981) (where defendant claimed he did not know the gun was loaded and he

intended only to "scare" the victim, his conduct nevertheless unjustifiably created an extremely high degree of risk, thereby evincing a wanton and reckless disregard for human life and constituted legal malice).

For the foregoing reasons, we find the evidence at trial, viewed under the proper standard, amply supported the trial court's guilty verdict for third degree murder. We further find the trial court erred in arresting judgment on the charge of third degree murder. We reiterate that it is not the function of the trial court to reevaluate credibility and weight of evidence upon post-trial motions, but only to ascertain the presence or absence of trial error in accordance with the proper standard of review.

Accordingly, we vacate the Order in arrest of judgment on the charge of third degree murder and the judgment of sentence imposed on the charge of involuntary manslaughter.

Order in arrest of judgment and judgment of sentence vacated and case remanded for reinstatement of the original verdict and for sentencing thereon.

Jurisdiction relinquished.