**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| C.J.B., OBO R.N., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.W., A MINOR | : | No. 1002 WDA 2022 |

Appeal from the Order Entered August 30, 2022
In the Court of Common Pleas of Butler County Civil Division at No(s):
MsD. No. 22-40175

BEFORE:   STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                **FILED: October 10, 2023**

C.J.B. appeals from the denial of the petition for a Sexual Violence Protective Order ("SVPO") under the Protection for Victims of Sexual Violence and Intimidation Act ("the Act")[1] she filed against S.W. on behalf of her daughter, R.N. ("R.N."). After careful review, we reverse and remand.

In May 2022, sixteen-year-old R.N. and seventeen-year-old S.W., who attended the same high school, were part of an orchestra group returning by bus from an overnight trip. *See* N.T., 8/30/22, at 4-7. The bus bounced when R.N. was out of her seat and S.W. invited her to sit next to him, which she did. *See id*. S.W. said he was cold. R.N. retrieved a blanket, covered them both, and slept. *See id*. at 8, 23. While R.N. slept, S.W. placed his hand on her thigh and moved his hand over her clothed vaginal area, awakening her. *See*

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 42 Pa.C.S.A. §§ 62A01-20.

*id*. at 7. S.W. continued to touch R.N.'s vaginal area despite her resistance,[2] and even as a chaperone spoke to him. After one or two minutes, R.N. moved to another seat. *See id*. at 8. R.N. immediately informed a friend by social media of the abuse. *See id*. at 9. S.W. texted R.N., "Sorry . . ." *Id*. at 10. S.W. sent a similar apology an hour later. *See id*. When he sent a third message saying he wanted to talk to her, R.N. responded, "I don't know what you want me to say?" They then had a text conversation. *See id*. at 11. In his text messages, S.W. said, "My body took over and I wasn't thinking," and "I do want you to know I'm not like that. I don't know what came over me and I don't like that. Obviously, I need to figure out how to control it. . . [M]y mom got a complaint from the chaperones and I started to cry and had to leave." *Id*. at 12. In another text, he wrote, "I'm sorry, [R.N.], so genuinely and truly sorry." *Id*. In yet another text, he wrote, "I've got no words for what happened. Like, I literally just sexually assaulted someone. What the actual hell is wrong with me?" *Id*. at 13.

The next day, R.N. reported the assault to a guidance counselor, who contacted the police. *See id*. at 10. R.N. saw S.W. twice at school; on one of those occasions, he touched her arm in a non-sexual and non-violent manner. *See id*. at 15-17, 26-28.

The police spoke to R.N. a few weeks later. *See id*. at 14. On behalf of R.N., C.J.B. filed a petition for an SVPO, which alleged that R.N. has classes

---

[2] R.N. testified that she pushed S.W. away, took off the blanket, and walked back to her seat. *See* N.T., 8/3022, at 8.

with S.W. and he talks to her or touches her and causes her emotional distress. *See id*. at 14, 28. Classes had resumed for the year by the time of the hearing on the SVPO petition. The school principal had removed S.W. from R.N.'s orchestra class and placed him in the chamber music group, which has concerts at the same time as the orchestra and travels with them. *See id*. at 17-19. S.W. had a subsequent delinquency proceeding. *See id*. at 32. At the hearing on the SVPO petition, R.N. testified that she found herself being called a whore at school. She posted on social media that she did not consent to S.W.'s sexual contact with her. *See id*. at 19-20. She testified that she also made a TikTok video in which she stated that her assailant, whom she did not name, had been given an opportunity to apologize to her after one of his hearings but had not done so. *See id*. at 20.

R.N. testified that as a result of the assault, she stopped working at her job, is reluctant to leave her room, hates "that part" of her body, does not want to be touched, and fears that other boys will assault her. She also testified that she finds it uncomfortable to see S.W. and his friends at school, *see id*. at 20-22, and wants to go to school and feel safe, *see id*. at 22.

R.N. was the only witness at the SVPO hearing. After her testimony, S.W. argued that C.J.B. had not shown by a preponderance of the evidence that R.N. was at continued risk of harm from S.W., and R.N.'s social media

posts undermined her assertions of emotional distress. ***See id***. at 38-39.[3]
C.J.B. argued that not all victims manifest their distress in the same way. ***See id***. at 42.

The court took a recess to review the Act. Having done so, the court stated that R.N. was a victim, and it found her testimony "very credible and believable." ***See id***. at 46. The court declared, however, that R.N. had not been a victim of sexual violence or intimidation as the Act defines those terms. The court denied the SVPO. ***See id***. at 47. At the hearing, the court did not address R.N.'s assertion of S.W.'s continuing risk of harm to her.[4]

C.J.B. filed a timely notice of appeal and C.J.B. and the trial court complied with Pa.R.A.P. 1925. This appeal followed.

C.J.B. raises the following issue for our review:

> Did the trial court err in denying the [f]inal [SVPO] by requiring that the sexual assault be violent in nature?

***See*** C.J.B.'s Brief at 7.

---

[3] Prior to the final SVPO hearing, R.N. posted a picture of herself on social media wondering if her chosen court dress would cause S.W.'s parents or the court to "slut shame[]" her. ***See id***. at 29-30. She also posted a photograph from S.W.'s delinquency hearing that depicted her smiling and was captioned, "My assailant and his mom when the judge asked if he wanted to apologize to me." ***Id***. at 32.

[4] The court did not analyze or even address the second element of the Act at the hearing; it denied the petition purely based on the alleged deficiency of proof of the first element. The court first addressed the second element in its Rule 1925(a) opinion. As a result, C.J.B.'s first opportunity to respond to the court's new explanation of the denial of the SVPO petition, including the second element of the Act, occurred in her appellate brief.

- 4 -

This Court reviews a challenge to the denial of an SVPO using the same standards applicable to Protection from Abuse Act[5] orders: we assess the order for an abuse of discretion or error of law. *See E.A.M. v. A.M.D.*, 173 A.3d 313, 316 (Pa. Super. 2017). An abuse of discretion is not merely an error in judgment, but an overriding or misapplication of the law, or a judgment that is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record. *See id*.[6]

To demonstrate the right to an SVPO, a plaintiff must: "(1) assert that the plaintiff or another individual . . . is a victim of sexual violence *or* intimidation committed by the defendant; and (2) prove by [a] preponderance of the evidence that the plaintiff or another individual . . . is at a continued risk of harm from the defendant." 42 Pa.C.S.A. § 62A06(a)(1)-(2) (emphasis added). To satisfy her burden of proof on the first element, a plaintiff need only make an assertion that the defendant committed an act of sexual violence which the trial court finds credible. *See E.A.M.*, 173 A.3d at 319.

---

[5] *See* 23 Pa.C.S.A. §§ 6101-6122.

[6] Where a plaintiff claims that a court abused its discretion in finding that she did not prove her claim by a preponderance of the evidence, this Court will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant shows that the court's determination was manifestly erroneous, arbitrary and capricious, or flagrantly contrary to the evidence. *See J.J. DeLuca Co. v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa. Super. 2012).

As defined by the Act, "sexual violence" includes the sexual offenses enumerated in Chapter 31 of the Pennsylvania Crimes Code (except sexual intercourse with animal). **See** 42 Pa.C.S.A. § 62A03.[7] The sexual offenses listed in Chapter 31 include the offense of indecent assault. **See** 18 Pa.C.S.A. § 3126(a)(1). Thus, indecent assault constitutes "sexual violence" for purposes of the Act. **See** 42 Pa.C.S.A. §§ 62A06(a)(1); 62A03. A person commits indecent assault when he touches a sexual or intimate part of the body without consent for the purposes of gratifying sexual desire. **See Commonwealth v. Gamby**, 283 A.3d 298, 318 (Pa. 2022).[8]

C.J.B. argues R.N.'s credible assertion that S.W. committed indecent assault, an act he admitted, established the Act's first element and the court misconstrued the Act's definition of "sexual violence." **See** C.J.B.'s Brief at 21-30.

The court found that although R.N. "was very credible and believable," and was "a victim," she was not a victim of sexual violence or intimidation as defined in the Act. **See** N.T., 8/30/22, at 46. **See id**. In its Rule 1925(a) opinion, the court acknowledged that S.W.'s behavior "could constitute" the crime of indecent assault, **see** Trial Court's 1925(a) Opinion, 10/6/22, at 3,

_____

[7] The Act also includes endangering the welfare of children, 18 Pa.C.S.A. § 4304, and some Chapter 63 offenses. **See** 42 Pa.C.S.A. § 62A03.

[8] That there is a layer of clothing between the assailant and the victim's intimate areas is not a defense to indecent assault. **See Commonwealth v. Ricco**, 650 A.2d 1084, 1086 (Pa. Super. 1994).

but did not because of doubts about R.N.'s credibility and the court's belief

S.W.'s actions were not sexually violent conduct.[9]  The court stated:

> R.N. voluntarily sat next to [S.W.].  They carried on a cordial conversation. . . .  Then, [R.N.] retrieved her blanket and placed it over herself and [S.W.]. . . .  At this point, [R.N.]'s testimony becomes obscure, and it is unclear how long they were under a blanket together before the incident. . . .  On cross-examination, [R.N.] clarified the incident lasted roughly one or two minutes. . . . **This obscurity diminished [R.N.]'s credibility on the timeline and the severity of the incident.  These interactions between the [p]arties evidence the nature of [S.W.'s] conduct as being non-violent.**
>
> \* \* \* \*
>
> The credible testimony does not rise to the egregious acts of sexual violence frequently presented at these hearings.  **This incident is starkly different from the sexual violence the [Act] is designed to protect against.**  There was no sexually violent act by [S.W.].

Trial Court's 1925(a) Opinion, 10/6/22, at 4-5 (record citations omitted;

emphasis added).

_____

[9] At the hearing, the trial court explicitly found R.N. "very credible and believable."  **See** N.T., 8/30/22, at 46.  In its 1925(a) opinion, however, the trial court cast doubt on the same testimony it previously credited, without any new testimony or evidence, and cited that alleged lack of credibility as a basis for finding that C.J.B. failed to prove the first element of the Act.  The trial court was not free to reverse its credibility determination in its 1925(a) opinion. As this Court has held in the context of a trial court's review of post-verdict motions, "[a] post-verdict court may not simply reweigh evidence _de novo_ and change its mind." **Commonwealth v. Fitten**, 657 A.2d 972, 973 (Pa. Super. 1995), citing **Commonwealth v. Johnson**, 631 A.2d 639 (Pa. Super. 1993) (_en_ banc).  To the extent the court suggests in its 1925(a) opinion that it changed its credibility determination due, _inter alia_, to the brevity and alleged lack of severity of the indecent assault, neither the indecent assault statute nor the Act contain an exception for _de minimis_ periods of sexual violence nor define a non-sexually violent crime of indecent assault.

The court's reasoning derives from an incorrect premise: that actual violence or physical resistance must be shown *in addition* to a Chapter 31 offense, here, indecent assault. The Act merely requires credible evidence of an enumerated offense.[10] In addition to R.N.'s testimony, the court also heard evidence that S.W. admitted in numerous texts that he sexually assaulted R.N. *See* N.T., 8/30/22, at 10-13. Having heard that testimony, the court declared R.N. "very credible and believable," and acknowledged that her allegations "could constitute" indecent assault. *See id*. at 3. Under the Act, the evidence constituted a credible assertion that S.W. committed an act of "sexual violence." *See* 42 Pa.C.S.A. §§ 62A03; 62A06(a)(1); 18 Pa.C.S.A. § 3126; *Gamby*, 283 A.3d at 314-18. The court's contrary conclusion was an error of law. *See E.A.M.*, 173 A.3d at 319.

Next, we turn to C.J.B.'s second issue, whether R.N. was at a continued risk of harm from S.W. Even though she did not assert this directly in her

---

[10] Although force and the threat of force are *alternate* means by which a person may commit indecent assault, *see* 18 Pa.C.S.A. § 3126(a)(2), (3), indecent assault is committed when, as here, sexual conduct occurs without the complainant's consent. *See* 18 Pa.C.S.A. § 3126(a)(1); *see also E.A.M.*, 173 A.3d at 320 (defendant inflicted sexual violence on plaintiff where she did not consent to a sexual encounter he initiated).

1925(b) statement[11] or statement of issues presented,[12] C.J.B. did present evidence at the hearing and made argument in her brief regarding her continued risk of harm. *See* C.J.B.'s Brief at 31-36. This Court must first consider whether we have jurisdiction to review this claim. *See Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011), *overruled on other grounds*, *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021).

As a general matter, this Court will not address a claim that is not raised in a Rule 1925(b) statement. *See* Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b)(4)(vii) (stating that "issues not included in the [1925(b)] Statement . . . are waived"). However, although both parties had the opportunity to present and did present evidence and argument regarding R.N.'s continued risk of harm, *see id*. at 18, 21-22, 31, 39-43, the court denied the SVPO based entirely on C.J.B.'s failure to prove the *first* element of the Act. *See id*. at 45-46 (court states that evidence does not prove a sexually violent act or intimidation or "harassment").[13] Only in its 1925(a) opinion, *after* C.J.B. filed her 1925(b) statement, did the court find the evidence failed to prove a continuing risk of

---

[11] In her Rule 1925(b) statement, C.J.B. asserted that the court erred in denying the SVPO because the sexual assault was required to be violent in nature. *See* 1925(b) Statement, 9/20/22. As noted, when C.J.B. filed her Rule 1925(b) statement, the trial court had not yet addressed the second element of the Act.

[12] *See* 42 Pa.C.S.A. § 62A06(a)(2).

[13] "Harassment" is not addressed in the Act.

harm to R.N. **See** Trial Court's 1925(a) Opinion, 10/6/22, at 6-7. C.J.B. could not, nor was she required to, anticipate the court's subsequent written opinion addressing the second element. We decline to find C.J.B. waived the issue by not raising it in her 1925(b) statement where the court discussed it for the first time in its Rule 1925(a) opinion. **See Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare**, --- A.3d ---, ---, 2023 WL 4412195 at *29 n.32 (Pa. Super., filed July 10, 2023) (declining to find an issue not raised in a 1925(b) statement waived when the court first discusses it in its Rule 1925(a) opinion).

However, that does not end our reviewability inquiry, because C.J.B. also failed to assert the continuing risk of harm element in the statement of questions involved in her brief.[14] Pennsylvania Rule of Appellate Procedure 2116, Statement of Questions Involved, provides that:

> [t]he statement of the questions involved must state concisely the issues to be resolved. . .. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.

Pa.R.A.P. 2116(a). Although C.J.B. should have addressed the issue in the Statement of Questions Involved based on her review of the trial court's Rule 1925(a) opinion, and this Court may find waiver on that basis, given the facts

---

[14] C.J.B.'s Statement of Questions Involved in its entirety reads as follows: "1. Did the trial court err in denying the Final Sexual Violence Protection Order by requiring that the sexual assault be violent in nature?" C.J.B.'s Brief at 7.

of this case, we decline to do so. Evidence regarding the continued risk of harm was presented at the hearing, *see* N.T., 8/30/22, at 18-22, 31, and C.J.B. discussed the continuing risk of harm at length in the argument section of her brief, *see* C.J.B.'s Brief at 31-36. Furthermore, S.W. addressed the merits of the claim and did not assert waiver. *See* S.W.'s Brief at 11-17.[15] Thus, C.J.B.'s failure to strictly comply with the rule does not impede our ability to review the issue. *See Werner v. Werner*, 149 A.3d 338, 341 (Pa. Super. 2016) (stating that Court will address the merits of an appeal where a party's failure to comply with Rule 2116 does not impede appellate review); *Commonwealth v. Long*, 786 A.2d 237, 239 n.3 (Pa. Super. 2001). *See also* 20A West's Pa. Prac., Appellate Practice § 2116:5 (collecting cases in which the Court addressed the merits of issues not included in the statement of questions involved).[16]

Turning to the continuing risk of harm element, the Act states that the General Assembly finds and declares, in relevant part, that:

> (1) Sexual violence is the most heinous crime against a person other than murder.
>
> (2) Sexual violence and intimidation can inflict humiliation, degradation and terror on the victim.

---

[15] S.W. first asserted waiver at oral argument before this Court.

[16] We note a competing body of case law that permits waiver under similar circumstances. Here, however, both parties and the court addressed and analyzed the substance of the issue. To find the claim waived under those circumstances would be to elevate form over substance.

- 11 -

* * * *

(5) Victims of sexual violence and intimidation desire safety and protection from future interactions with their offender, regardless of whether they seek criminal prosecution.

(6) This chapter provides the victim with a civil remedy requiring the offender to stay away from the victim, as well as other appropriate relief.

42 Pa.C.S.A. §62A02. The Act's purpose is to protect victims of sexual assault and provide them safety independent of criminal prosecution. *See* 42 Pa.C.S.A. §§ 62A01, 62A02(5), (6).

C.J.B. claims the Act does not require a defendant to intend harm to plaintiff and also asserts the evidence showed R.N. feared additional contact with S.W. *See* C.J.B.'s Brief at 12, 14-15, 31-36. R.N. testified that it was difficult for her to see S.W. in class, *see* N.T., 8/30/22, at 18; she wanted to feel safe at school, and had concerns because S.W. had said he could not control himself around her and had already touched her sexually while being supervised by school staff. *See id*. at 22. R.N. testified she was worried about the situation, which made her stressed and sad. *See id*. at 31. R.N. further explained:

> And I don't want to have to go to school because it [the abuse] happened [when S.W. was] school supervised. A teacher, a chaperone, was looking at me while he had his hands on me. And I just don't want – I deserve, like, some type of protection because I just, I just want to be able to go to school and feel safe.

*See id*. It is clear from current law that the focus is on proof of ***the victim's subjective feelings*** of apprehension, fear, and distress; and a defendant's

intent is irrelevant to that assessment. **See K.N.B. v. M.D.**, 259 A.3d 341, 351 (Pa. 2021) (declaring that the Act does not require the plaintiff's fear to be objectively reasonable and that the defendant's intent is irrelevant); **see also E.A.M.**, 173 A.3d at 321 (stating that for a victim of sexual violence, the fear of harm and desire to avoid future contact with her abuser is paramount and her desire to avoid future contact with her abuser is "the precise purpose of the statute"). R.N.'s testimony established the "apprehension, fear and emotional distress" that satisfies the continuing risk of harm element of the Act. The evidence therefore supported the grant of the SVPO. **See E.A.B.**, 173 A.3d at 321.

The court misapprehended the law by speculating that R.N.'s "very real emotional distress" might be attributable to social pressures from her school peers and finding R.N.'s concern dissipated because the school had placed S.W. in a different orchestra class. **See** Trial Court's 1925(a) Opinion, 10/6/22, at 7. The record showed that R.N. felt apprehension, fear, and distress and the court recognized that R.N. felt "very real emotional distress." The court thus erred as a matter of law by finding that the evidence did not establish a continuing risk of harm. **See** 42 Pa.C.S.A. §§ 62A01, 62A02(5), (6); **see also E.A.M.**, 173 A.3d at 320; **K.N.B.**, 259 A.3d at 351.[17] Because, as a matter of

---

[17] That R.N. might also be suffering because of negative treatment from her peers did not negate her subjective fear of S.W. Further S.W.'s transfer to chamber music is not dispositive and also did not have the effect the court
*(Footnote Continued Next Page)*

law, the evidence established both elements of the Act and the trial court committed errors of law in reaching a contrary result, we reverse and remand for the entry of an SVPO order.

Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judge Pellegrini joins this decision.

Judge Stabile concurs in the result.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

10/10/2023

---

stated: R.N. testified that chamber music has concerts with her orchestra section and travels with them. *See* N.T., 8/30/22, 17-19.