J-A23002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM HUGHES, | : | |
| | : | |
| Appellant | : | No. 1779 WDA 2013 |

Appeal from the Judgment of Sentence entered on July 16, 2013
in the Court of Common Pleas of Allegheny County,
Criminal Division, No. CP-02-CR-0009919-2012

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 24, 2015**

William Hughes ("Hughes") appeals from the judgment of sentence imposed after he was convicted of three counts of aggravated assault and one count each of criminal conspiracy and criminal mischief.[1]  We affirm.

In its Pa.R.A.P. 1925(a) Opinion, the trial court thoroughly set forth the facts underlying this appeal, which arises out of an assault on John Hrabolowski ("Hrabolowski") and John Szwaczkowski ("Szwaczkowski"), perpetrated by Hughes and his co-defendant, Sherryl Feli ("Feli").  **See** Trial Court Opinion, 10/21/14, at 4-8.  We adopt the trial court's recitation herein by reference.  **See id.**

Following the assault, the Commonwealth charged Hughes with one count each of criminal conspiracy, criminal mischief and aggravated assault – serious bodily injury (hereinafter "aggravated assault – SBI"), and two

_____

[1] **See** 18 Pa.C.S.A. §§ 2702(a)(1), (4); 903(a)(1); 3304(a)(5).

counts of aggravated assault – deadly weapon used (hereinafter "aggravated assault – DW"), pertaining to his assaults upon Hrabolowski and Szwaczkowski, respectively.

The matter proceeded to a non-jury trial, after which the trial court found Hughes guilty on all counts.[2] On July 16, 2013, the trial court imposed an aggregate sentence of 7½ to 15 years in prison, followed by ten years of probation. Hughes filed a post-sentence Motion, which the trial court denied. Hughes thereafter timely filed a Notice of Appeal, and a Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal.

On appeal, Hughes presents the following issues for our review:

1. Did the trial court err in convicting [] Hughes of the offenses against [] Hrabolowski (counts one and two, aggravated assault [– SBI, and aggravated assault – DW),] when the evidence was insufficient to sustain a conviction at these counts and in spite of the weight of the evidence when [] Hughes did not have physical contact with [] Hrabolowski?

2. Did the trial court err in convicting [] Hughes of criminal conspiracy [], when the evidence was insufficient to sustain [this] conviction [] and in spite of the weight of the evidence, when no evidence suggested that [] Hughes directed [] Feli in her actions against [] Hrabolowski?

3. Did the trial court err in sentencing [] Hughes to a term of incarceration that was manifestly excessive and without consideration of [] Hughes'[s] rehabilitative needs?

Brief for Appellant at 3.

---

[2] The trial court found Feli guilty of essentially the same charges as Hughes. She also filed a direct appeal, docketed before this panel at 1672 WDA 2013.

Hughes first challenges the sufficiency of the evidence supporting his convictions of (1) aggravated assault – SBI; and (2) aggravated assault – DW, concerning his assault of Hrabolowski. *Id.* at 8-10. Hughes also argues, in a single sentence, that both of these convictions are against the weight of the evidence. *Id.* at 10. We will address Hughes's challenges to each of these convictions separately.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply … is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

Our standard in reviewing a weight of the evidence claim is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge

- 3 -

has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted).

Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the [fact-finder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. On appeal, [an appellate] Court cannot substitute its judgment for that of the [fact-finder] on issues of credibility, or that of the trial judge respecting weight. Our review is limited to determining whether the trial court abused its discretion[.]

*Commonwealth v. Sanchez*, 36 A.3d 24, 27 (Pa. 2011) (citations and quotation marks omitted).

Hughes first challenges his conviction of aggravated assault – DW, pertaining to Hrabolowski,[3] arguing that he cannot be properly convicted of this offense based upon a theory of accomplice liability.[4] *See* Brief for Appellant at 10 (emphasizing that "Hughes never interacted with [] Hrabolowski during the physical altercation[,]" and asserting that "no

---

[3] Hughes does not challenge his conviction of aggravated assault – DW pertaining to Szwaczkowski.

[4] Though Hughes does not specifically so state, his argument implies that he does not believe he was properly convicted as Feli's accomplice/co-conspirator. We discuss separately Hughes's challenge to his conviction of conspiracy to commit aggravated assault.

- 4 -

testimony was presented at trial to suggest that [] Hughes was directing [] Feli in any way[.]"). Hughes argues that the evidence was insufficient, and this conviction was against the weight of the evidence, because the bicycle lock used by Feli to strike Hrabolowski on his forearms was not a "deadly weapon" under the statutory definition of this term. *Id.* Hughes asserts that "[t]he bicycle lock used by [] Feli cannot be considered a deadly weapon, as it was not used to inflict serious bodily injury or in a manner that might have resulted in a risk of serious bodily injury or death. … Hughes should not be liable for [] Feli's own actions toward [] Hrabolowski." *Id.*

The Crimes Code provides that a person is guilty of aggravated assault – DW if he or she "attempts to cause or intentionally or knowingly causes bodily injury[5] to another with a deadly weapon[.]" 18 Pa.C.S.A. § 2702(a)(4) (footnote added). A "deadly weapon" is defined as "[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, *or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury*." 18 Pa.C.S.A. § 2301 (emphasis added). In discussing what constitutes a deadly weapon, in the context of application of the deadly weapon enhancement for sentencing purposes, this Court observed as follows:

> "[I]tems not normally classified as deadly weapons can become so based upon their use under particular circumstances."

---

[5] Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

> ***Commonwealth v. Rhoades***, 2010 PA Super 204, 8 A.3d 912, 917 (Pa. Super. 2010) (intact glass bottle qualified as a deadly weapon). We found many examples in our cases: ... ***Commonwealth v. Scullin***, 414 Pa. Super. 442, 607 A.2d 750 (Pa. Super. 1992) (tire iron thrown at victim was a deadly weapon); ***Commonwealth v. Cornish***, 403 Pa. Super. 492, 589 A.2d 718, 721 (Pa. Super. 1991) (fireplace poker used to strike victim constitutes a deadly weapon); ***Commonwealth v. Brown***, 402 Pa. Super. 369, 587 A.2d 6, 7 (Pa. Super. 1991) (saw used to stab victim was a deadly weapon); ***Commonwealth v. Chapman***, 365 Pa. Super. 10, 528 A.2d 990 (Pa. Super. 1987) (straightedge razor placed at the face of an individual is a deadly weapon).

***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1268 (Pa. Super. 2014) (*en banc*).[6]

Concerning accomplice liability, the Crimes Code provides that "[a] person is legally responsible for the conduct of another person when he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S.A. § 306(b)(3). Section 306 defines an accomplice, in relevant part, as follows:

> A person is an accomplice of another person in the commission of an offense if:
>
> (1) with the intent of promoting or facilitating the commission of the offense, he:
>
> (i) solicits such other person to commit it; or
>
> (ii) aids or agrees or attempts to aid such other person in planning or committing it[.]

---

[6] In ***Buterbaugh***, the Court noted that "[t]he Crimes Code provides an almost verbatim definition of deadly weapon as the one set forth in the Sentencing Guidelines[.]" ***Buterbaugh***, 91 A.3d at 1268.

***Id.*** § 306(c)(1). "[These] requirements may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid." ***Commonwealth v. Knox***, 50 A.3d 749, 755 (Pa. Super. 2012) (citation omitted). "[P]roof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." ***Id.*** at 755-56 (citation omitted).

In its Opinion, the trial court addressed Hughes's claims and the applicable law, concluding that the evidence was sufficient to sustain Hughes's conviction, as Feli's co-conspirator and accomplice, of aggravated assault – DW. ***See*** Trial Court Opinion, 10/21/14, at 15-17; ***see also Buterbaugh, supra*** (collecting cases ruling that objects not normally classified as deadly weapons became so based upon their use under particular circumstances). We agree and affirm based upon the trial court's Opinion with regard to Hughes's sufficiency challenge. ***See*** Trial Court Opinion, 10/21/14, at 15-17.

Concerning Hughes's claim that his conviction of aggravated assault – DW was against the weight of the evidence, he has failed to develop his claim in any meaningful fashion, and, therefore, we could deem it waived. ***See Umbelina v. Adams***, 34 A.3d 151, 161 (Pa. Super. 2011) (stating that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." (citation

omitted)); Pa.R.A.P. 2119(a). Nevertheless, we discern no abuse of discretion by the trial court in rejecting Hughes's weight of the evidence claim. *See* Trial Court Opinion, 10/21/14, at 16. The trial court's verdict is not so contrary to the evidence as to shock our collective sense of justice. *See Sanchez, supra*.

Next, Hughes challenges the sufficiency and weight of the evidence supporting his conviction of aggravated assault – SBI, advancing the same arguments that he did in the above-discussed claim. *See* Brief for Appellant at 8-10. Hughes additionally argues that "[a]lthough [Feli's] action[s in striking Hrabolowski on the arms with her bike lock] caused some injury, [] Hrabolowski testified that he did not seek medical treatment for this injury, thereby indicating that he did not believe his injury serious enough that there was a substantial risk of permanent disfigurement or impairment." *Id.* at 10. Though Hughes does not explicitly raise this argument, he appears to challenge the trial court's finding that Feli, his accomplice, had inflicted, or attempted to inflict, "serious bodily injury" upon Hrabolowski, a requisite element of the offense. *Id.*

A person is guilty of aggravated assault – SBI if she "attempts to cause serious bodily injury[7] to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme

---

[7] "Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1) (footnote added). "Aggravated assault [– SBI] does not require proof that serious bodily injury was inflicted[,] but only that an attempt was made to cause such injury. Where the victim does not sustain serious bodily injury, the Commonwealth must prove that the appellant acted with specific intent to cause serious bodily injury." *Commonwealth v. Lewis*, 911 A.2d 558, 564 (Pa. Super. 2006) (citations omitted); *see also* 18 Pa.C.S.A. § 901(a) (providing that "[a] person commits an attempt when, with intent to commit a specific crime, [s]he does any act which constitutes a substantial step toward the commission of that crime.").

> "A person acts intentionally with respect to a material element of an offense when … it is [her] conscious object to engage in conduct of that nature or to cause such a result …." 18 Pa.C.S. § 302(b)(1)(i). As intent is a subjective frame of mind, it is of necessity difficult of direct proof. The intent to cause serious bodily injury may be proven by direct or circumstantial evidence.

*Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006) (citations to case law and internal quotation marks omitted). "[A] determination of whether an appellant acted with intent to cause serious bodily injury must be determined on a case-by-case basis." *Commonwealth v. Dailey*, 828 A.2d 356, 360 (Pa. Super. 2003); *see also id.* (observing that, "depending on the other circumstances, even a single punch may be sufficient.").

In the instant case, it is undisputed that Hrabolowski did not suffer "serious bodily injury" under the statutory definition of this term.

Accordingly, the relevant inquiry is whether Feli attempted and intended to inflict serious bodily injury upon Hrabolowski. *See Matthew, supra*.

In its Opinion, the trial court addressed Hughes's claims and concluded that (1) the evidence was sufficient to establish that Feli had attempted and intended to inflict serious bodily injury upon Hrabolowski; (2) the verdict as to this count was not against the weight of the evidence; and (3) therefore, Hughes could properly be convicted of aggravated assault – SBI as Feli's accomplice. *See* Trial Court Opinion, 10/21/14, at 18-20. The trial court's analysis is supported by the record and the law, and we affirm on this basis with regard to Hughes's claims. *See id.*

In his second issue, Hughes argues that the evidence was insufficient to sustain his conviction of criminal conspiracy to commit aggravated assault, and the verdict as to this count was against the weight of the evidence. *See* Brief for Appellant at 11-12. According to Hughes,

> [a]lthough it was established that [] Hughes and [] Feli were in a relationship together and were riding their bicycles together to a shared destination at the time this incident occurred, no evidence established a "unity of criminal purpose" between them. … No evidence presented at trial suggested that [] Hughes had any connection to [] Feli's actions other than his presence at the time of the incident.

*Id.* (paragraph break omitted) (citing *Commonwealth v. Thomas*, 65 A.3d 939, 945 (Pa. Super. 2013) (rejecting the defendant's sufficiency challenge concerning his conviction of conspiracy to commit aggravated assault where the relationship between the defendant and his four co-conspirators, their

conduct during the assault, and overall circumstances established that they had "acted with a 'unity of criminal purpose.'")).

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent[,] and (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000) (citation omitted); *see also* 18 Pa.C.S.A. § 903(a).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators[,] sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Knox*, 50 A.3d at 755 (citation omitted). Stated differently, an "agreement to commit an unlawful act … may be proved inferentially by circumstantial evidence, *i.e.*, the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." *Thomas*, 65 A.3d at 943 (Pa. Super. 2013) (citation omitted).

As discussed above, the evidence was sufficient to sustain the trial court's finding that Feli possessed the requisite intent to commit aggravated assault – SBI on Hrabolowski. Accordingly, for purposes of determining whether Hughes can properly be convicted as Feli's co-conspirator, we limit our discussion to whether the circumstantial evidence established an agreement between Feli and Hughes to assault Hrabolowski. **See Hennigan, supra**.

Here, the trial court addressed Hughes's challenge to his conspiracy conviction in its Opinion, concluding that the circumstantial evidence was sufficient to establish a criminal understanding between Feli and Hughes. **See** Trial Court Opinion, 10/21/14, at 11-13. We agree with the trial court's analysis and conclusion, which is supported by the record, and affirm on this basis with regard to Hughes's sufficiency challenge to his conspiracy conviction. **See id.** Moreover, the verdict on this count was not so contrary to the evidence as to shock one's sense of justice; the rationale in the trial court's Opinion concerning Hughes's weight challenge establishes that the court properly exercised its discretion in rejecting this claim. **See id.** at 14; **see also Sanchez, supra**.

Finally, Hughes asserts that the sentencing court abused its discretion by imposing an excessive sentence and failing to consider (1) his rehabilitative needs (and, particularly, his mental health issues and independent steps taken in pursuit of rehabilitation); and (2) the fact that Hughes's prior convictions that were used to compute his prior record score

occurred several years before the instant assaults. *See* Brief for Appellant at 13-15.

Hughes's claim challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the discretionary sentencing claim for appellate review by raising it in a timely post-sentence motion, the appellant must (1) *include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P. 2119(f)*; and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Hill*, 66 A.3d at 363-64.

Here, Hughes's brief does not contain a Rule 2119(f) statement, and the Commonwealth has objected to this defect. *See* Commonwealth's Brief at 34. Accordingly, this issue is waived. *See Commonwealth v. Robinson*, 931 A.2d 15, 19, 22 (Pa. Super. 2007) (*en banc*) (finding waiver of the appellant's discretionary aspects of sentencing claim because he had failed to include a Rule 2119(f) statement in his brief, and the

Commonwealth objected to this defect).[8]

Accordingly, because we conclude that the trial court did not abuse its discretion, or commit an error of law, in rejecting Hughes's challenges to the weight and sufficiency of the evidence, and his sentencing challenge is waived, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2015

---

[8] Even if we did not find waiver, we would determine that Hughes's challenge to his sentence lacks merit based upon the reasoning advanced by the trial court in its Opinion. **See** Trial Court Opinion, 10/21/14, at 20-25 (stating, *inter alia*, that the sentencing court did, in fact, consider the age of Hughes's prior convictions, and that the sentence imposed was within the standard range of the sentencing guidelines); **see also Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010) (stating that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.").

IN THE COURT OF COMMON PLEAS FIFTH JUDICIAL DISTRICT
ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,    CRIMINAL DIVISION

v.

WILLIAM HUGHES,    CC No. 201209919

    Defendant.

---

COMMONWEALTH OF PENNSYLVANIA,

v.

SHERRYL FELI,    CC No. 201209920

        Defendant.

ORIGINAL
Criminal Division
Dept. of Court Records
Allegheny County, PA.

OPINION OF THE COURT

Honorable Beth A. Lazzara
Allegheny County Courthouse
436 Grant Street
Pittsburgh, PA 15219

Counsel of Record:

For the Defendants:

A. Kayleigh Shebs, Esq.
Counsel for William Hughes

Daniel J. Eichinger, Esquire
Counsel for Sherryl Feli

For the Commonwealth:

Office of the District Attorney
of Allegheny County
400 Allegheny County
Courthouse
Pittsburgh, PA 15219

ALLEGHENY COUNTY PA
CRIMINAL DIVISION
DEPT. OF COURT RECORDS

2014 OCT 21 PM 2: 25

FILED

1

IN THE COURT OF COMMON PLEAS FIFTH JUDICIAL DISTRICT
ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,    CRIMINAL DIVISION

v.

WILLIAM HUGHES,                                  CC No. 201209919

Defendant.

---

COMMONWEALTH OF PENNSYLVANIA,

v.

SHERRYL FELI,                                       CC No. 201209920

Defendant.

## **OPINION OF THE COURT**

This matter involves two defendants, William Hughes and Sherryl
Feli.  Both Defendants were charged with three (3) counts of
aggravated assault and one (1) count of criminal conspiracy.  William
Hughes was also charged with criminal mischief.  Count 1 at each
information charged aggravated assault pursuant to 18 Pa. C.S.A.
§2702(a)(1), alleging the infliction of serious bodily injury, or an
attempt to do so, on victim John Hrabolowski.  The second and third
counts in each information charged aggravated assault pursuant to 18
Pa. C.S.A. §2702(a)(4), alleging that the Defendants caused bodily
injury to the victims, John Hrabolowski (Count 2) and John

2

Szwaczkowski (Count 3), with a deadly weapon. The criminal conspiracy count alleged that the Defendants agreed that they would commit the crime of assault on the victims.[1] Finally, Defendant Hughes was charged with criminal mischief[2], alleging that he intentionally damaged the property of John Hrabolowski.

The Defendants waived their right to a jury trial and proceeded non-jury before this court. On the day of trial, March 7, 2013, they were adjudged guilty at all counts. The Defendant Sherryl Feli was sentenced on May 23, 2013 to not less than twenty-four (24) months nor more than forty-eight (48) months of imprisonment at count 1, followed by a consecutive period of probation of seven (7) years, and to no further penalty on the remaining counts. William Hughes was sentenced on July 16, 2013 to not less than seven and one half (7 ½) years nor more than fifteen (15) years of imprisonment at count 1, to five (5) years probation at count 2, to become effective upon his parole from the sentence at count 1, and to a consecutive term of eight (8) years probation at count 3. No further penalty was imposed on the remaining counts. Both parties filed post-sentence motions which were denied. Notices of Appeal were timely filed and, pursuant

---

[1] 18 Pa. C.S.A. § 901.
[2] 18 Pa. C.S.A.. § 3304.

3

to this court's Order, Concise Statements of Errors Complained of on Appeal were filed by both Defendants.

Defendant Hughes challenged the weight and sufficiency of the evidence as to Count 1, Count 2 and Count 4. Defendant Feli challenged the sufficiency and weight of the evidence as to all counts. Both also contended that the sentences imposed constituted an abuse of discretion. Before turning to these claims, it is necessary to review the evidence, taken in the light most favorable to the Commonwealth as the verdict winner.

John Hrabolowski testified that on March 26, 2012, as he parked his car outside the Lawrenceville post office, he was verbally confronted by a man he later identified as Defendant Hughes. (N.T. 9-11, 14-15). Hughes made a derogatory comment about Mr. Hrabolowski's parking. (N.T. 15, 37). After Defendant Hughes made his comment to Mr. Hrabolowski, Mr. Hrabolowski proceeded into the post office. (N.T. 15-16). As he was in the post office, Mr. Hrabolowski observed Defendant Hughes turn his bicycle around and head towards his vehicle. (N.T. 17, 40). As Mr. Hrabolowski left the post office and walked back towards his vehicle, he saw Defendant Hughes grab his heavy steel, D-shaped bicycle lock, approach his vehicle and strike his

4

driver side view mirror, breaking it. (N.T. 17-18, 39-40). Mr. Hrabolowski asked Defendant Hughes why he broke his mirror. (N.T. 18). In response to the question, and as Mr. Hrabolowski approached Hughes, Defendant Hughes got off his bike and began swinging the lock at Mr. Hrabolowski, coming within two (2) to three (3) feet of him, before leaving the area. (N.T. 18-19).

Mr. Hrabolowski immediately called the police and reported what had happened. (N.T. 19-20, 41). Although he was told to wait for the police to arrive, Mr. Hrabolowski decided to drive to his nearby apartment to have his roommate accompany him when he spoke with the police. (N.T. 20-21, 44-45). As he was heading home, Mr. Hrabolowski was again confronted by Defendant Hughes, who got off his bicycle and again approached Mr. Hrabolowski, waving his bicycle lock at him. (N.T. 44-46).

Mr. Hrabolowski picked up his roommate, the second victim, John Szwaczkowski, at their home and then headed back towards the post office. (N.T. 22-23, 47-48). As he was driving towards the post office, he saw the Defendants on their bicycles. (N.T. 24, 48). Mr. Hrabolowski stopped his car, opened the car door, and had his leg out to exit, while telling the Defendants that they needed to stay where

5

they were because the police were on their way. (N.T. 23-26). As Mr. Hrabolowski was telling the Defendants to remain until the police arrived, Defendant Hughes began approaching him, again swinging the bike lock. (N.T. 26, 98-101). As Defendant Hughes got closer to the vehicle, Mr. Szwaczkowski, who had previously exited the car and had been standing next to the open passenger door, came around the back of the vehicle to tell Mr. Hrabolowski to remain in the vehicle. (N.T. 26-27, 70-71, 101). Before he moved to the driver's side of the vehicle, Mr. Szwaczkowski saw that both Defendants had bike locks in their hands. (N.T. 70, 98-101).

As Mr. Szwaczkowski was turned toward Mr. Hrabolowski to tell him to remain in the car, Defendant Hughes struck Mr. Szwaczkowski on the back of the head with the bike lock. (N.T. 28, 71-72, 102-103). Mr. Szwaczkowski stumbled against the car and eventually fell to the ground on the other side of the car. (N.T. 28, 72-73, 103-104). As Defendant Hughes stood over him with his bike lock, appearing ready to strike him again, Mr. Hrabolowski grabbed Defendant Hughes' bike lock in an effort to prevent Defendant Hughes from striking his friend again. (N.T. 28, 73). As he was holding onto the bike lock in Defendant Hughes' hands, Defendant Feli began to strike him on his arms, attempting to break Mr. Hrabolowski's grip on Defendant

6

Hughes' bike lock. (N.T. 28-30). Mr. Hrabolowski testified that he suffered bruising on his arms as a result of being struck by Defendant Feli's bike lock. (N.T. 30-31).

Defendant Hughes, as he straddled his bicycle, struck Mr. Szwaczkowski in his ribs repeatedly with his front tire. (N.T. 32, 73, 105-108). Defendant Feli also used her bike lock to strike Mr. Szwaczkowski in the shoulder, neck and head as he lay on the ground. (N.T. 74-75, 109, 117). As Mr. Szwaczkowski struggled to free himself, he bit Defendant Hughes in the leg, after which the assault abruptly stopped, and the Defendants fled the area on their bicycles. (N.T. 32, 75-76, 108-109).

John Szwaczkowski was taken from the scene by medics to Mercy Hospital, where he was admitted for four (4) days, having suffered a concussion, a laceration on his head that required four (4) staples to close, five (5) broken ribs and other bruising. (N.T. 77-78). Photographs of his injuries, taken while he was at the hospital, were admitted into evidence. (*See* Commonwealth Exhibits 5-30). This court would also note that the injury to Mr. John Szwaczkowski's head was clearly visible to, and easily noticed by, this court when Mr. Szwaczkowski testified during the non-jury trial, a fact mentioned by

the court during the sentencing of each Defendant. (*See* Hughes Sentencing Transcript, 7-8;Feli Sentencing Transcript, 20).

The Defendants testified that they were simply defending themselves from the victims. (N.T. 142-144, 206-208). Both Defendants agreed that Defendant Hughes' bike lock was nine (9) inches in length and made of metal and that Defendant Feli's lock was seven (7) inches in length and also made of metal. (N.T. 152, 215). Defendant Feli denied ever striking anyone with a bike lock, claiming that her only involvement was when she punched Mr. Hrabolowski in the arms because he would not let go of her bicycle. (N.T. 146-150). Despite the Defendants' claims that they acted in self-defense, neither Defendant Feli nor Defendant Hughes called the police until four (4) days after this incident. (N.T. 149).

Both Defendants challenged the sufficiency of the evidence and the weight of the evidence. Before turning to the specific offenses, the court would note that the well-established test for a challenge to the sufficiency of the evidence is whether the evidence, taken in the light most favorable to the Commonwealth as verdict winner, establishes each and every element of the offenses charged beyond a reasonable doubt. Commonwealth v. Noel Matos Montalvo, 956 A.2d 926, 932

(Pa. 2008). The Commonwealth is entitled to all reasonable inferences from the evidence, and it must be remembered that credibility determinations are for the fact finder. A challenge to the credibility of a witness is not a basis for a claim that the evidence was insufficient. A fact-finder is free to believe some, all or none of the testimony of any witness presented by either party and to accept or reject any evidence submitted by either party. Commonwealth v. Cousar, 928 A.2d 1025, 1033 (Pa. 2007).

When reviewing a claim that the verdict was against the weight of the evidence, it must be remembered that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the jury's verdict if it is so contrary to the evidence as to shock one's sense of justice." Commonwealth v. Begley, 780 A.2d 605, 619 (Pa. 2001).

> When a judge sits as fact-finder in a non-jury trial:
>
> [A] judge's role ... is not equivalent to his or her role with respect to post-trial motions. During trial, the province of a trial judge sitting without a jury is to do what the jury is required to do, namely, consider all the evidence; reconcile contradictions and discrepancies in the testimony, if possible; dismiss what is incredible; and, from all that is

presented, assemble a logical, continuous account which rings with verisimilitude, appeals to reason and convinces the judgment that the controverted event occurred in that and in no other manner. *Commonwealth v. Lemons,* 404 Pa. 263, 268, 171 A.2d 785, 788 (1961). With respect to post-trial motions, however, the trial judge's role is to consider and rectify, if necessary, alleged trial errors. *Commonwealth v. Nock,* 414 Pa.Super. 326, 333, 606 A.2d 1380, 1383 (1992). When considering a post-verdict motion in arrest of judgment or the granting of a new trial, "the trial court cannot alter the verdict based upon a redetermination of credibility or a re-evaluation of evidence." *Id.* at 334, 606 A.2d at 1384.

Commonwealth v. Johnson, 631 A.2d 639, 643 (Pa. Super. 1993).

Accordingly, in assessing a challenge to the weight of the evidence, a judge may not revisit credibility determinations it made when rendering its verdict and may not re-weigh the evidence.

## COUNT 4- CRIMINAL CONSPIRACY

To sustain a conviction for criminal conspiracy, the Commonwealth must prove, beyond a reasonable doubt, the presence of the following elements: 1) an intent to commit or aid in an unlawful act; 2) an agreement with a co-conspirator; and 3) an overt act in furtherance of the conspiracy. 18 Pa. C.S.A. § 901.

> Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e. the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

Commonwealth v. Galinves, 786 A.2d 1004, 1010 (Pa. Super. 2001).

10

The Defendants contend that the evidence was insufficient to establish the existence of a conspiratorial agreement. They also claim the verdict was against the weight of the evidence. Neither claim has any merit.

While there was no direct evidence of a conspiratorial agreement between the Defendants, the Commonwealth introduced sufficient circumstantial evidence to support a conviction for conspiracy. The law is clear that:

> Circumstantial evidence can include, but is not limited to, the relationship between the parties, the knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. Commonwealth v. French, 396 Pa. Super.436, 578 A.2d 1292, 1294 (1990). These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail. Id.

Commonwealth v. Thoeun Tha, 64 A.3d 704, 710 (Pa. Super. 2013).

While it is true that there was no evidence of an explicit or stated agreement between the parties, the evidence clearly established that they were jointly participating in this crime and that there was a tacit understanding between them. The evidence proved that there was an association between these Defendants and that they were together before, during, and after the two (2) incidents involving

11

these victims. The evidence also established that both had knowledge of the offenses committed by the other conspirator.

Defendant Feli was present when Defendant Hughes knocked the mirror off of Mr. Hrabolowski's vehicle. (N.T. 17-18). When the Defendants encountered the victims again, Defendant Feli was present when Defendant Hughes began the assault on the two (2) victims. (N.T. 24-26). She then joined him in the assault, striking John Hrabolowski on the arms to break his grip on the bicycle lock Hughes was using in the assault (N.T. 28-30) and then striking John Szwaczkowski, the second victim, about the head and neck as he lay on the ground attempting to defend himself from Defendant Hughes' attack. (N.T. 74-75, 109, 117). Also, the Defendants left the scene of the attack together. (N.T. 32-33). These facts were sufficient to establish a criminal conspiracy between the Defendants in this matter, with the object of that conspiracy being the assault on these victims.

In Commonwealth v. French, 578 A.2d 1292, 1294 (Pa. Super. 1990), the Superior Court found the evidence sufficient to prove conspiracy to commit aggravated assault where the appellant and a group of relatives and friends approached the victim together, knocked the victim to the ground, continued to beat the victim and attacked the

police when they arrived. Similarly, in Commonwealth v. ~~Polen~~ Poland, 22 A.3d 518, 519-520 (Pa. Super. 2011). The Superior Court affirmed a finding that the evidence was sufficient to support an aggravated assault conviction where the appellant and a group of individuals approached the victims as a group, battered the victim's face, knocking out a tooth, and fled the scene together. In neither of those cases was there evidence of a stated or explicit agreement; the agreement was inferred from the circumstances.

The facts in this case are markedly similar. The Defendants were together during the initial encounter between the victim and John Hrabolowski. (N.T. 14-16). They remained together when they encountered him and the second victim a few minutes later (N.T. 24-26), and both participated in the assaults on both victims, assisting one another in doing so. (N.T. 28-30, 32, 73-75). Both also fled the scene of the attack together. (N.T. 32-33). This was sufficient to prove the conspiratorial agreement and the required shared intent. The actual assaults were clearly the overt acts. Accordingly, the challenge to the sufficiency of the evidence as to the charges of Criminal Conspiracy was properly rejected by this court.

Similarly, the challenge to the weight was also properly rejected. This court's verdict turned on an assessment of the credibility of the witnesses, an assessment that was unfavorable to the Defendants. To put it simply, where the testimony of the Defendants conflicted with the testimony of the victims, this court believed the testimony of the victims over that of the Defendants. This court is not only without the power to revisit credibility determinations, it would not, if it had that power, change them. The court found the victims to be believable and credible, whereas the testimony of the Defendants lacked that "ring of truth" necessary for this court to believe their testimony. The verdict was not against the weight of the evidence as to the charge of criminal conspiracy.

## COUNTS 2 & 3

## AGGRAVATED ASSAULT- ASSAULT WITH A DEADLY WEAPON

It is axiomatic that a defendant who is not a principal actor in committing a crime may, nevertheless, be liable for the crime if he was an accomplice of the principal actor. Commonwealth v. Bradley, 392 A.2d 688, 690 (Pa. Super. 1978). A defendant can also be liable for the acts of another by virtue of their conspiracy. "Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt

14

acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." Commonwealth v. Murphy, 844 A.2d 1228, 1238 (Pa. 2004). Accordingly, either Defendant here can be held criminally liable for the acts of the other Defendant if those acts were done in furtherance of the criminal conspiracy. Both Defendants contend that the evidence was insufficient as to the Aggravated Assault charges found at counts 2 and 3. Count 2 charged Aggravated Assault –Assault with a Deadly Weapon as to John Hrabolowski, while count 3 charged the same as with regard to John Szwaczkowski.

Turning first to Count 2, the evidence established that Defendant Feli struck this victim several times on his arms with her heavy, metal bicycle lock. (N.T. 28-30, 152). Mr. Hrabolowski suffered pain and bruising in the areas where he was struck. (N.T. 30-31). The lock constituted a deadly weapon pursuant to Pennsylvania law, which defines a deadly weapon as "[a]ny firearm, whether loaded or unloaded, or **any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury**." 18 Pa. C.S.A. § 2301 (emphasis added). A

15

heavy blunt object, like a seven (7) inch long metal bicycle lock, is capable of producing death or serious bodily injury. In this case, a similar lock wielded by Defendant Hughes actually caused serious bodily injury to John Szwaczkowski. (N.T. 77-78; Commonwealth Exhibits 5-30). Obviously, then, Defendant Feli's bike lock was capable of doing the same to Mr. Hrabolowski.

The evidence also established that, at minimum, the victim suffered bodily injury. He testified that he suffered substantial pain, and he had bruising on his arms. (N.T. 30-31). In <u>Commonwealth v. Goins</u>, 501 A.2d 279 (Pa. Super. 1985), the Superior Court held that bruising and scratching was sufficient to establish that the victim suffered bodily injury.[3] Accordingly, the evidence was sufficient to prove the Defendant Feli guilty of this offense as a principal. The verdict was also not against the weight of the evidence.

Because Defendant Hughes, as a result of his involvement in the criminal conspiracy to assault the victims and as Defendant Feli's accomplice, is responsible for the crimes committed by his co-conspirator in furtherance of their conspiracy, his challenge to the sufficiency and weight of the evidence as to Count 2 is likewise without

---

[3] As the Court will set forth later in this Opinion, the evidence was also sufficient to establish that Defendant Feli attempted to cause serious bodily injury to the victim Hrabolowski when she struck him repeatedly with the bicycle lock.

16

merit. Her assault was in furtherance of the object of the conspiratorial agreement, the assault of the victims.

The evidence was also sufficient as to Count 3 as to Defendant Feli both as a principal and as Defendant Hughes' co-conspirator.[4] Because she was Defendant Hughes' accomplice and co-conspirator, she could be found guilty of any act committed by Defendant Hughes in furtherance of the conspiracy. Defendant Hughes struck John Szwaczkowski in the head, causing a skull fracture and concussion and leaving him with a visible indentation in his head. (N.T. 28, 71-72, 77-78, 102-103; Hughes Sentencing Transcript 7-8; Feli Sentencing Transcript 20). Defendant Hughes also struck Mr. Szwaczkowski in the ribs with his bicycle, breaking five of them. (N.T. 32, 73, 105-108, 77-78). This was certainly sufficient to establish his guilt of aggravated assault- assault with a deadly weapon and, because Defendant Feli was his co-conspirator and/or accomplice, it was sufficient to establish her guilt as well.

Defendant Feli was also guilty as a principal for her conduct in striking this victim as he lay on the ground. Though she denied striking him with her lock, and Mr. Szwaczkowski admitted that he did

---

[4] Defendant Hughes did not challenge the verdict of guilty at this Count of his information.

not actually see her do so, the circumstantial evidence was sufficient to prove that she did. The victim testified that he was struck in his back and around his head and neck as he lay on the ground. (N.T. 74-75, 109, 117). The only other person present wielding a bike lock, Defendant Hughes, could not have hit him as he and Mr. Hrabolowski were struggling over control of his bike lock. (N.T. 28, 73). It was a reasonable inference, therefore, that the blows Mr. Szwaczkowski felt came from Defendant Feli.

### COUNT 1- AGGRAVATED ASSAULT

The Defendants both challenge the sufficiency and weight of the evidence as to Count 1, which charged them with aggravated assault under subsection (a)(1). This required proof that the Defendants, through their own actions or through the actions of another for whom they would be legally responsible, attempted to cause, or intentionally, knowingly or recklessly caused serious bodily injury to John Hrabolowski.

This victim, John Hrabolowski, was not as seriously injured as John Szwaczkowski. He reported bruises on his arms. (N.T. 30-31). This was not sufficient to establish that he actually suffered serious bodily injury. The fact that the injury was caused by the Defendant

18

Feli striking him, repeatedly, with the heavy bike lock, however, was enough to prove an attempt to do so. The Superior Court in Commonwealth v. Eddowes, 580 A.2d 769, 773 (Pa. Super. 1990), observed: "The fact that appellant did not cause any serious injury is irrelevant, as the statute punishes attempts as well as completed assaults. 18 Pa.C.S.A. § 2702(a)."

To determine whether an assailant possessed the intent to inflict serious bodily injury, the totality of the circumstances surrounding the assault must be considered. Commonwealth v. Alexander, 383 A.2d 887, 889 (Pa. 1978). Among the circumstances that can be considered is whether an instrument capable of causing serious bodily injury was used in the attack. Here, a deadly weapon, as has been previously discussed, namely, the bicycle lock, was used in the attack.

In Eddowes, *supra*, the defendant slashed at the victim with a knife, but did not cut him. That behavior was enough to justify his conviction at this same statutory section. Here, the Defendant Feli swung at, and actually struck, the victim with a weapon capable of causing death or serious bodily injury. (N.T. 28-30). She hit him several times, according to the testimony. (N.T. 28-30). In fact, she did so after seeing her co-Defendant strike the other victim with the

bike lock in the head, knocking him to the ground and causing him to bleed profusely. (N.T. 28). She actually witnessed the infliction of serious bodily injury by the heavy bike lock that she wielded before she used her nearly identical bike lock to strike repeatedly at John Hrabolowski in his arms. She did this while he was simultaneously engaged with her co-Defendant, trying to stop further attacks on his roommate, Mr. Szwaczkowski. (N.T. 28-30). The court is satisfied that her repeated blows, with a deadly weapon, were sufficient to prove that her intent was to cause serious bodily injury. As the evidence was sufficient to prove her guilt as a principal for her acts in striking the victim, it was likewise sufficient to prove her co-Defendant guilty of the same offense as her co-conspirator and/or accomplice. The court also does not believe that the verdict was against the weight of the evidence as to either Defendant at this count.

## SENTENCING

Finally, both Defendants have challenged the sentences imposed by this court. Trial courts have broad discretion in setting sentences. Sentencing is a matter vested within the sound discretion of the sentencing judge and will not be disturbed on appeal absent a manifest abuse of discretion. Com. v. Mouzon, 828 A.2d 1126, 1128 (Pa. Super. 2003). To constitute an abuse of discretion, the sentence

20

imposed must either exceed the statutory limits or be manifestly excessive. Com. v. Gaddis, 639 A.2d 462, 469 (Pa. Super. 2003). An abuse of discretion is not merely shown by an error in judgment, but rather by establishing that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. Mouzon, *supra*, at 1128. In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as the court is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance or indifference. Com. v. Ellis, 700 A.2d 948, 958 (Pa. Super. 1997).

Where an excessiveness claim is based on a court's sentencing outside of the standard guideline ranges, an appellate court looks, at a minimum, for an indication on the record that the sentencing court understood the suggested sentencing range. Com. v. Rodda, 723 A.2d 212, 214 (Pa. Super. 1999). When the court so indicates, it may deviate from the guidelines to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the victim and the community, so long as the court also

21

states the factual basis and specific reasons to deviate from the guidelines. Mouzon, *supra*, at 1128. Sentencing guidelines are merely advisory, and the sentencing court may sentence a defendant outside of the guidelines so long as it places its reasons for deviation on the record. Com. v. Cunningham, 805 A.2d 566, 575 (Pa. Super. 2002).

In setting a sentence, a court has discretion to run the sentence concurrently with or consecutively to other sentences being imposed. Mouzon, *supra*, at 1130. The Superior Court has expressed concern that running sentences concurrently as a matter of habit can give a defendant a "volume discount" for separate criminal acts. Com. v. Hoag, 665 A.2d 1212, 1214 (Pa. Super. 1995).

Defendant Hughes claims that his sentence was an abuse of discretion because his prior record score was calculated using convictions that occurred nine (9) and ten (10) years ago and because the sentence did not "properly reflect the nature of the offense, the impact on the victim or the rehabilitative needs of the defendant." This claim is specious. How a prior record score is calculated is set by statute and regulation. (*See* 42 Pa. C.S.A. §9721 (b) and 204 Pa. Code §303.1, et seq.) The age of the prior offenses that determine the prior record score is not taken into account in determining that

22

score. While a court may consider the age of the offenses that resulted in the prior record score in determining what sentence to impose, the Defendant's claim that the court erred in utilizing those older convictions to calculate the prior record score is without merit.

To the extent that the Defendant is claiming that the age of the convictions warranted a lesser sentence, that claim is likewise without merit. These prior convictions were not offenses committed decades ago, when the Defendant was barely an adult; having been born in 1978, he was in his mid to late-twenties when he committed those offenses. They occurred less than ten (10) years prior to this violent incident, and the court gave them proper consideration in formulating the sentence.

Defendant Hughes also generally complains that the sentence was an abuse of discretion. He does not explain with any specificity why the sentence was supposedly an abuse of this court's broad sentencing discretion. Defendant Hughes simply states that the sentence imposed did not "properly reflect the nature of the offense, the impact on the victim or the rehabilitative needs of the defendant." Simply mimicking the language of the sentencing code does not provide the court with an explanation for "why" the sentence failed to

23

comply with the sentencing code. In <u>Commonwealth v. Bullock</u>, 948 A.2d 818 (Pa. Super. 2008), the court held that, where the defendant claimed that the sentence "...was unduly harsh given the nature and the circumstances of the case... [and] was inconsistent with the Sentencing Act which provides for the balancing of the welfare of the community with the rehabilitative needs of the Appellant...," failed to preserve, for appellate review, a challenge to the discretionary aspect of the sentence. The Defendant's claim here similarly fails to explain how the court abused its discretion. Other than the incorrect claim that the court should not have considered nine (9) and ten (10) year old convictions in calculating his prior record score, Defendant Hughes has cited to no specific provision of the sentencing act this court supposedly violated. Accordingly, the sentencing claims should be considered waived.

To the extent that the claims are not deemed waived, the court set forth, at length, on the record, why it imposed the standard range sentence it did. (Hughes' Sentencing Transcript, 24-28). The court could very well have imposed standard range sentences at all but one of the other counts, but, instead, imposed probationary sentences. The court is satisfied that the sentence imposed on the Defendant Hughes was the appropriate sentence given the severity of the

24

offenses, the impact on the victim and the rehabilitative needs of the Defendant.

Defendant Feli claims that court failed to properly consider the factors required by the sentencing code. The record of the trial and sentencing hearing belies this claim. The suggestion that Defendant Feli had a "limited role" in the incident is contrary to the facts that the Commonwealth established at trial. While Defendant Feli described her role as limited, this court, in rendering its verdict, concluded otherwise. She struck both victims with her bicycle lock, hitting Mr. Hrabolowski repeatedly in the arms and hitting Mr. Szwaczkowski in his back, neck and head. She assisted her co-Defendant in his assaults on both victims. The Defendant's insistence that she played a "limited role" in these assaults when she spoke at the sentencing hearing, contrary to the evidence presented at trial and the verdicts this court rendered, was a large factor in causing this court to impose the sentence it did. The court explained:

> THE COURT: I've been tossing around sentences in my mind for the last two weeks for you. Some ranged from things that you would very much like, to some things you would not much like. My sort of final decision is I always need to hear what people say at the time of sentencing. And what you have said today, quite frankly, to me does not err on the side of giving you time served and letting you go back to Connecticut at this point in time. Because I don't think you fully realize what you did in this situation. I don't think you fully comprehend your actions here. You

25

weren't a puppet on a string. You weren't a programmed robot. You are a person who has free will, who is able to exercise that free will to do the right thing. And you failed to do that here today and on that day.

(Feli Sentencing Transcript, 23-24). The court properly considered this Defendant's substantial role in this incident. (Feli Sentencing Transcript, 19-24).

The court also considered the impact on the victims and the need for the protection of society, as well as the rehabilitative needs of Defendant Feli. The harm to each victim was considered by the court and mentioned by the court at the sentencing hearing. The court also noted that it had received, read and considered several letters provided on the Defendant's behalf. The availability of rehabilitative programs at the state prison was also discussed.

The minimum sentence of incarceration imposed at Count 1, twenty-four (24) months, was near the bottom of the standard range of twenty-two (22) to thirty-six (36) months. No other sentence of incarceration was imposed on the other counts, even though some of those involved a second victim. The court properly weighed the statutory sentencing factors and imposed a sentence that was consistent with the protection of society, the severity of the offense, the impact of the offense on the victims and the rehabilitative needs of

Defendant Feli. The court did not abuse its discretion when it imposed sentence.

Given that there was sufficient, credible evidence to support the convictions of the Defendants as to all counts, and that this court sentenced in the standard range for both Defendants after considering the severity of the offenses, the impact on the victims, the protection of society and the needs of the Defendants, this court's convictions and sentences of both Defendants should be upheld.

BY THE COURT:

Date: _10|21|14_  _____,J.

27